## Case No. 11,673.

### In re REIMAN et al.

[7 Ben. 455;[1] 11 N. B. R. 21.]

District Court, S. D. New York. Oct., 1874.

BANKRUPTCY — COMPOSITION WITH CREDITORS — CONSTITUTIONAL LAW—JURISDICTION.

1. A petition in involuntary bankruptcy was filed on August 3d, 1874, against R. & Co., by fourteen of their creditors, representing that they constituted one-fourth in number of the creditors, and that their debts amounted to one-third of the debts of the firm. While proceedings on this petition were pending, the debtors filed a petition, requesting that a meeting of their creditors, whom they named, might be called for the purpose of their offering a composition to their creditors. The meeting was called, ten days' notice being sent to the creditors. The meeting was held, and the debtors presented a statement of their debts and assets, and offered a composition; whereupon a resolution was passed to accept the same, it being an offer of thirty cents on the dollar, ten cents in cash, and the rest in notes, "said notes to be satisfactorily indorsed," and the whole to be void as to any creditor in case of any default in payment as to him. This resolution was signed by the debtors, and by two-thirds in number of the creditors, representing one-half in value of the debts. The court then made an order directing the clerk to call a meeting at his office, to ascertain if the resolution had been passed as directed by the 43d section of the bankruptcy act as amended (18 Stat. 178), five days' notice of the meeting to be given to all creditors named in the debtors' petition. The meeting was held, and the clerk certified to the court, that the resolution had been adopted as directed by the 43d section; that it had been approved by two-thirds of the creditors, representing one-half in value of all the debts; that the creditors were seventy-four in number; and that it was for the best interests of all concerned, that the resolution be recorded, and the statements showing the whole of the debts and assets be filed. At the meeting a creditor raised the objection, that the amendment of the bankruptcy act, under which the composition was offered, was unconstitutional, because it provided for the discharge of debtors from their liabilities, without the surrender of their property, contemplated by a bankrupt act. The objection was also raised, that the composition offered did not conform to the law, because it provided for a payment partly in notes, instead of money. At the hearing before the court, the objection of jurisdiction was raised, that, while the number of creditors was seventy-four, only fourteen joined in the petition in bankruptcy, being less than one-fourth: *Held*, that, in order to authorize proceedings for a composition, a case in bankruptcy must be pending.

2. In this case, although the number of creditors was seventy-four, the number whose debts respectively exceeded $250, was only thirty-four, and, therefore, the act of June 22d, 1874, had been complied with, and the objection to the jurisdiction was not tenable.

3. The power given to congress by article 1, § 8, of the constitution must be held to be general, unlimited and unrestricted over the subject of bankruptcy.

[Cited in Re California Pac. R. Co., Case No. 2,315; Re Jackson, Id. 7,124.]

4. The statute, providing for compositions, is not unconstitutional.

[Cited in Re Chamberlin, Case No. 2,580.]

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

5. The composition offered did not provide, when properly construed, for a payment otherwise than in money, and the provision for the giving of the notes did not prevent the composition from being conformable to law.

[Cited in Re Cavan, Case No. 2,528; Re Hurst, Id. 6,925; Re Louis, Id. 8,528. Quoted in Re Weber Furniture Co., Id. 17,331. Cited in Re McKeon, Id. 8,858; Ex parte Hamlin, Id. 5,993; Re Wilson, Id. 17,781; Re Shaw, 9 Fed. 498.]

[Cited in Harrison v. Gamble, 69 Mich. 107, 36 N. W. 687.]

6. The resolution accepting the composition, however, was defective, because it did not define how the notes should be "satisfactorily indorsed." It should either have named the indorser or provided for his being named.

[Cited in Re Hannahs, Case No. 6,033. Cited, but not followed, in Re Wilson, Id. 17,785.]

7. An additional resolution providing for such security might be presented to the court, but it must be adopted at another meeting of creditors, and presented to the court, in the same way as the original resolution.

In bankruptcy.

S. Boardman, for debtors.

D. Campbell, for A. T. Stewart & Co.

Chapman, Scott & Crowell, for Lazard, Frères.

BLATCHFORD, District Judge. On the 3d of August, 1874, a petition in involuntary bankruptcy was filed in this court against Morris Reiman and Albert Friedlander, composing the firm of M. Reiman & Co., by fourteen of their creditors, who alleged, in the petition, that they constituted one-fourth at least in number of the creditors of said firm, and that the debts owing to them by said firm amounted in the aggregate to at least one-third of all the debts owing by said firm, and provable against them. The demand of each of the petitioners was alleged to exceed the sum of $250. The petition and the papers accompanying it being regarded as sufficient, an order was made by the court on the 3d of August, requiring the debtors to show cause on the 25th of August why the prayer of the petition should not be granted. On the return day of the order, proof of due service was made, and the debtors appeared by attorney. The proceedings on the order were adjourned, and have since been adjourned from time to time, and now stand adjourned to a future day. Meantime, on the 12th of August, the debtors filed in this court a sworn petition, setting forth what they stated therein to be a true statement of the names and addresses of their creditors, and of the amounts due to them, and praying that a meeting of their creditors might be called by the court, and under its direction, for the purpose of their offering a composition to their creditors. Thereupon, on the 12th of August, an order was made by this court, directing that the clerk give notice to the creditors by letter to be mailed, postage prepaid, to each known creditor, and to each creditor named in the said statement, at the address

set forth therein, that a meeting of said creditors would be held at the office of said clerk, on a day named in the order, for the purpose of the debtors' proposing a composition to their creditors, in satisfaction of the debts owed by them to each of their creditors, and that such notice be sent to each of said creditors at least ten days before said meeting. Due notice of the meeting was given, and it was held. The debtors were present at the meeting, and statements were presented on their behalf at the meeting to the creditors, showing the whole debts and assets of the debtors, and the names and addresses of the creditors to whom such debts were respectively due. The debtors also made at the meeting a proposal in writing for a composition of the debts owed by them to their creditors. There were present at the meeting, either in person or by proxy, forty-two of the creditors, whose claims in the aggregate amount to $121,343 88, and who proved their debts or filed proofs of the same. A resolution accepting the proposed composition was adopted by a majority in number and three-fourths in value of the creditors assembled at the meeting, and present either in person or by proxy. Both of the debtors were examined at the meeting by counsel appearing for A. T. Stewart & Co., creditors for $19,-578 60, and one of them was examined by counsel for Lazard, Frères, creditors for $10,-583 04, and one of them was examined by his own counsel. The statement of the debtors showed assets amounting nominally to $106,897 13, and debts amounting to $157,-914 48, due to seventy-four creditors. Of the forty-two creditors represented at the meeting, forty, having debts amounting to $92,-047 08, voted in favor of the resolution, and two, having debts amounting to $29,296 80, voted against the resolution, the two being A. T. Stewart & Co., and Lazard, Frères. The excess over three-fourths in value of the $121,343 88, voting in favor of the resolution, was $1,039 17. The clerk reported the foregoing proceedings, and the resolution adopted, which was as follows: "First. That it is for the best interest of all concerned, that the creditors of said alleged bankrupts should accept of the composition this day proposed by said alleged bankrupts, in satisfaction of the several debts by them due and owing to their said several creditors. Second. That we, the creditors of said firm of M. Reiman & Co., whose names are hereunder written, severally agree, for ourselves, and for our respective executors, partners and assigns, to and with the said Moses Reiman and Albert Friedlander, and each of them, and their and each of their executors, administrators and assigns, to accept and receive the sum of thirty cents on the dollar, for all that the said firm of M. Reiman & Co. owe unto us, the same to be in full satisfaction and discharge of the several debts due and owing unto us from them and each of them, provided that the said sum of thirty cents for

every dollar be paid severally unto us, or to our respective partners, executors, administrators or assigns, in manner following, that is to say, ten per cent. thereof within ten days after this resolution shall have been recorded, and the statements of debts and assets herewith presented shall have been duly filed; ten per cent. thereof in four months' note, dated Sept. 1st, A. D. 1874; ten per cent. thereof in eight months' note, dated Sept. 1st, A. D. 1874; said notes to be satisfactorily indorsed. Third. That, in default thereof, this agreement and everything herein contained shall be void and of none effect towards him and them of us to whom any such default in payment shall happen to be made. Fourth. That this resolution be certified and reported to the court." This resolution was signed by the two debtors, and, as presented to the court, it bore the signatures of fifty creditors, having debts amounting to $92,482 92, these being the signatures of two-thirds in number and one-half in value of all the creditors of the debtors. Upon these papers, this court made an order, on the 7th of September, directing that the clerk call a meeting for the 16th of September, to be held at his office, for the purpose of said clerk's inquiring whether the said resolution had been passed in the manner directed by section 43d of the bankruptcy act, as amended, and that notice of the time, place and purpose of such meeting be sent by mail, postage prepaid, to each of the known creditors of the debtors and to each of the creditors whose names and addresses were set forth in the statement furnished by the debtors at said first meeting, at least five days before the day appointed for the holding of such meeting; and that the clerk further inquire, at such meeting, whether such composition had been confirmed by the signatures thereto of each of the debtors, and two-thirds in number, and one-half in value, of all the creditors of the debtors, and whether it was for the best interest of all concerned that said resolution be recorded, and such statements of debts and assets filed, and that the clerk report the result of such inquiries, together with the proof of service of said notices on the creditors of the debtors, to this court. The clerk duly called the meeting, and it was held. He certifies and reports, that the resolution accepting the composition was passed in the manner directed by said section 43, and has been confirmed by the signatures thereto of each of the debtors, and by the signatures thereto of fifty of the creditors of the debtors, who have signed the same either in person or by their duly authorized attorney: that said fifty creditors constitute two-thirds in number, and represent the sum of $92,482 92, which sum constitutes one-half in value of all the creditors of the debtors; that the number of creditors of the debtors is seventy-four, and the several debts and sums of money owing by them to their said several creditors amount to $157,914 48;

and that, in his opinion, it is for the best interest of all concerned that the said resolution be recorded, and that the said statements showing the whole of the debts and assets of said debtors be filed. Proof of due service of the notices to the creditors for the second meeting is presented. At the second meeting, counsel for A. T. Stewart & Co. presented the following objections to the proposed composition and to the discharge of the debtors thereunder: "First. That the amendment to the bankrupt act, under which said composition is proposed, is unconstitutional, in so far as it provides for a discharge of the debtor or debtors from their liabilities upon the acceptance by a portion of the creditors of a partial payment of their debts, without the surrender of the property of the debtors, contemplated by a bankrupt act. Second. That the composition proposed by the alleged bankrupts herein does not conform to the law under which it purports, or is alleged, to be made, in that it provides for a payment to the creditors partly in notes, instead of money, as provided for by said law." No other objections were presented at the second meeting.

At the hearing on these two objections, the counsel for Lazard, Frères, interposed the objection, that the proceedings were void, because the creditors were shown to be 74 in number, and only 14 of them had joined in the petition in involuntary bankruptcy, being less than one-fourth. As this is a jurisdictional objection, it is entertained, although not made at either of the meetings of the creditors. A case in bankruptcy must be pending, to authorize proceedings for a composition, and, under the act of June 22d, 1874, no case in involuntary bankruptcy can be brought, unless the petition is made by at least one-fourth in number of the creditors. But the act provides, that, in computing the number of creditors who are to join in the petition, creditors whose respective debts do not exceed $250 shall not be reckoned, unless there be no creditors whose debts exceed $250, or unless the requisite number of creditors holding debts exceeding $250 fail to sign the petition. In the present case, the debt of each of the 14 petitioning creditors exceeds $250, and the number of creditors whose respective debts exceed $250 is 34. Therefore, the statute was complied with, and the objection is not tenable.

2 [The provision for a composition with creditors, added to the 43d section of the act of 1867 [14 Stat. 538], by the act of June 22d, 1874, is in these words: "In all cases of bankruptcy now pending, or to be hereafter pending, by or against any person, whether an adjudication in bankruptcy shall have been had or not, the creditors of such alleged bankrupt may, at a meeting called under the direction of the court, and upon not less than ten days' notice to each known

creditor of the time, place, and purpose of such meeting, such notice to be personal or otherwise, as the court may direct, resolve that a composition proposed by the debtor shall be accepted in satisfaction of the debts due to them from the debtor. And such resolution shall, to be operative, have been passed by a majority in number and three-fourths in value of the creditors of the debtor, assembled at such meeting either in person or by proxy, and shall be confirmed by the signatures thereto of the debtor and two-thirds in number and one-half in value of all the creditors of the debtor. * * * The debtor, unless prevented by sickness or other cause satisfactory to such meeting, shall be present at the same, and shall answer any inquiries made of him; and he, or if he is so prevented from being at such meeting, some one in his behalf, shall produce to the meeting a statement showing the whole of his assets and debts, and the names and addresses of the creditors to whom such debts are respectively due. Such resolution, together with the statement of the debtor as to his assets and debts, shall be presented to the court, and the court shall, upon notice to all the creditors of the debtor, of not less than five days, and upon hearing, inquire whether such resolution has been passed in the manner directed by this section; and if satisfied that it has been so passed, it shall, subject to the provisions hereinafter contained, and upon being satisfied that the same is for the best interest of all concerned, cause such resolution to be recorded, and a statement of assets and debts to be filed; and until such record and filing shall have taken place, such resolution shall be of no validity. * * * The creditors may, by resolution passed in the manner and under the circumstances aforesaid, add to, or vary, the provisions of any composition previously accepted by them, without prejudice to any persons taking interests under such provisions, who do not assent to such additions or variation. And any such additional resolution shall be presented to the court in the same manner, and proceeded with in the same way, and with the same consequences as the resolution by which the composition was accepted in the first instance. The provisions of a composition accepted by such resolution in pursuance of this section, shall be binding on all the creditors whose names and addresses, and the amounts of the debts due to whom, are shown in the statement of the debtor produced at the meeting at which the resolution shall have been passed, but shall not affect or prejudice the rights of any other creditors. * * * Every such composition shall, subject to priorities declared in said act, provide for a pro rata payment or satisfaction, in money, to the creditors of such debtor, in proportion to the amount of their unsecured debts, or their debts in respect to which any such security shall have been duly surrendered and given up.

2 [From 11 N. B. R. 21.]

["The provisions of any composition made in pursuance of this section may be enforced by the court, on motion made in a summary manner by any person interested, and on reasonable notice; and any disobedience of the order of the court made on such motion shall be deemed to be a contempt of court. Rules and regulations of court may be made in relation to proceedings of composition herein provided for, in the same manner and to the same extent as now provided by law in relation to proceedings in bankruptcy. If it shall, at any time, appear to the court, on notice, satisfactory evidence, and hearing, that a composition under this section cannot, in consequence of legal difficulties, or for any sufficient cause, proceed without injustice or undue delay to the creditors or to the debtor, the court may refuse to accept and confirm such composition, or may set the same aside; and, in either case, the debtor shall be proceeded with as a bankrupt, in conformity with the provisions of law, and proceedings may be had accordingly; and the time during which such composition shall have been in force, shall not, in such case, be computed in calculating periods of time prescribed by said act."] [2]

The constitution of the United States (article 1, § 8) provides, that "the congress shall have power * * * to establish * * * uniform laws on the subject of bankruptcies throughout the United States," and "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers." It is contended, that the provisions for a composition with creditors, enacted by the act of 1874, are not "a law on the subject of bankruptcies;" that the expression, "a law on the subject of bankruptcies," had, at the time of the adoption of the constitution, a well settled meaning, in the laws of England; that reference must be had to the provisions of those laws, to determine the meaning of the language of the constitution; that it always has been an indispensable element in a law on the subject of bankruptcies, that all the property of the bankrupt or debtor shall be surrendered and its proceeds be distributed pro rata among all his creditors; that, without such element, a law may be one for the confiscation of debts or for the release of the debtor, but will not be a law on the subject of bankruptcies; that all the English statutes on the subject, enacted prior to the adoption of the constitution, contained provisions for vesting all of the bankrupt's or debtor's estate in an assignee for the benefit of his creditors, and for a pro rata distribution of the proceeds of such estate among such creditors; that it is not enough, in order that a law shall be one on the subject of bankruptcies, within the meaning of the constitution, that there shall be a provision for the release of the bankrupt or debtor from his debts without full payment

of the same; that such provision for release must be accompanied by a surrender of all the property of the bankrupt or debtor to his creditors; and that a law which provides for such release, without such surrender, is, so far as non-assenting creditors are concerned, merely a law for the confiscation of their debts, for the benefit of the bankrupt or debtor, and not a law on the subject of bankruptcies, within the meaning of the constitution.

Mr. Justice Story, in commenting on the provision of the constitution, says (Story, Const. § 1106) that "the general objects of all bankrupt and insolvent laws are, on the one hand, to secure to creditors an appropriation of the property of their debtors pro tanto to the discharge of their debts, whenever the latter are unable to discharge the whole amount, and, on the other hand, to relieve unfortunate and honest debtors from perpetual bondage to their creditors." He also says (section 1111): "What laws are to be deemed bankrupt laws, within the meaning of the constitution, has been a matter of much forensic discussion and argument. Attempts have been made to distinguish between bankrupt laws and insolvent laws. For example, it has been said that laws which merely liberate the person of the debtor are insolvent laws, and those which discharge the contract are bankrupt laws. * * * Again, it has been said that insolvent laws act on imprisoned debtors only at their own instance, and bankrupt laws only at the instance of creditors. But, however true this may have been in past times, as the actual course of English legislation, it is not true, and never was true, as a distinction in colonial legislation. * * * It is believed that no laws were ever passed in America, by the colonies or states, which had the technical denomination of bankrupt laws. But insolvent laws, quite co-extensive with the English bankrupt system in their operations and objects, have not been unfrequent in colonial and state legislation. No distinction was ever practically, or even theoretically, attempted to be made between bankruptcies and insolvencies. And a historical review of the colonial and state legislation will abundantly show, that a bankrupt law may contain those regulations which are generally found in insolvent laws, and that an insolvent law may contain those which are common to bankrupt laws." He further says, (section 1113): "In the English system the bankrupt laws are limited to persons who are traders, or connected with matters of trade and commerce. * * * But this is a mere matter of policy, and by no means enters into the nature of such laws. There is nothing in the nature or reason of such laws to prevent their being applied to any other class of unfortunate and meritorious debtors." In a note to the section last cited it is said: "Perhaps, as satisfactory a description of a bankrupt law as can be framed is, that it

---

[2] [From 11 N. B. R. 21.]

is a law for the benefit and relief of creditors and their debtors, in cases in which the latter are unable or unwilling to pay their debts. And a law on the subject of bankruptcies, in the sense of the constitution, is a law making provisions for cases of persons failing to pay their debts." In Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122, 195, Chief Justice Marshall says: "The difficulty of discriminating with any accuracy between insolvent and bankrupt laws, would lead to the opinion, that a bankrupt law may contain those regulations which are generally found in insolvent laws, and that an insolvent law may contain those which are common to a bankrupt law."

The general observations thus cited were made without reference to the particular provisions of any statute. But the reported decisions are in consonance with such views. In the case of In re Klein [Case No. 7,865] under the bankruptcy act of 1841 [5 Stat. 440] the district court for Missouri had held that the extent of the power of congress to establish uniform laws on the subject of bankruptcies throughout the United States was limited to the principle on which the English bankrupt system was founded, and, therefore, to a proceeding by a creditor against a debtor who was a trader, in which there should be "distribution of the bankrupt's effects equally among his creditors, and a discharge of the debtor from his contracts upon obtaining the consent of a given majority of his creditors; and that the act of 1841, in so far as it permitted the debtor, at his own sole election, to come into court and coerce an extinction of his debts and abrogation of his contracts, contrary to the will of his creditors, was in violation of the leading principles on which the English laws were founded." The circuit court (Mr. Justice Catron), in the case of Klein, on appeal, held the act of 1841 to be constitutional, and observed (1 How. [42 U. S.] 278): "Other and controlling considerations enter into the construction of the power 'conferred on congress.' It is general and unlimited. It gives the unrestricted authority to congress over the entire subject, as the parliament of Great Britain had it, and as the sovereign states of this Union had it before the time when the constitution was adopted. To go no further—what was the power of the states on the subject of bankruptcies? They could, and constantly did, permit the debtor to come in voluntarily, and surrender his property, and ask a discharge from his debts. The property was distributed generally among the creditors, and the debts of the petitioner annulled. Nor does the constitution prohibit the states from passing such laws. * * * What the states might do before the adoption of the constitution may well be ascertained from what they now do in virtue of their respective powers. They may frame a bankrupt law in any form they see proper. * * * In the state tribunals the debtor comes in voluntarily and forces the creditor to prove his debt or be barred. One not a trader may apply. Neither is the consent of the creditors, or any portion of them, necessary to authorize a discharge from the contracts of the debtor. So he may have no property to divide, and many debts to annul, from which he seeks a discharge, and from which he is discharged. These powers clearly belonged to the state governments before congress was invested with them; and this was done without limitation. * * * In considering the question now before me, I have not pretended to give a definition, but purposely avoided any attempt to define the mere word bankruptcy. It is employed in the constitution in the plural, and as part of an expression, 'the subject of bankruptcies.' The ideas attached to the word in this connection are numerous and complicated. They form a subject of extensive and complicated legislation. Of this subject, congress has general jurisdiction; and the true inquiry is, to what limits is that jurisdiction restricted? I hold, it extends to all cases where the law causes to be distributed the property of the debtor among his creditors. This is its least limit. Its greatest is a discharge of the debtor from his contracts. And all intermediate legislation, affecting substance and form, but tending to further the great end of the subject—distribution and discharge—are in the competency and discretion of congress. With the policy of a law letting in all classes, others as well as traders, and permitting the bankrupt to come in voluntarily and be discharged without the consent of his creditors, the courts have no concern. It belongs to the law-makers. I have spoken of state bankrupt laws. I deem every state law a bankrupt law, in substance and fact, that causes to be distributed by a tribunal the property of a debtor among his creditors; and it is especially such if it causes the debtor to be discharged from his contracts, within the limits prescribed by the case of Ogden v. Saunders, 12 Wheat. [25 U. S.] 213. Such a law may be denominated an insolvent law. Still it deals directly with the subject of bankruptcies, and is a bankrupt law, in the sense of the constitution." The views thus set forth proceed upon the well established principle that, in making laws necessary and proper to carry into execution the powers vested by the constitution in the government of the United States, congress possesses the choice of means, and may use any means which are, in fact, conducive to the exercise of a power granted by the constitution. U. S. v. Fisher, 2 Cranch [6 U. S.] 358, 396; McCulloch v. Maryland, 4 Wheat. [17 U. S.] 316, 421; The Legal Tender Cases, 12 Wall. [79 U. S.] 457, 539.

In the case of In re Silverman [Case No. 12,855], in the district court for Oregon, in 1871, under the present bankruptcy act, a debtor proceeded against in invitum took the objection that congress had no power to pass a bankruptcy law applicable to other persons than traders, because its power was limited

to the passing of such bankruptcy laws as were in force in England at the time of the adoption of the constitution, and those laws did not apply to any one except traders. The court, in overruling the objection, says: "The subject of bankruptcies includes the distribution of the property of the fraudulent or insolvent debtor among his creditors, and the discharge of such debtor from his contracts and legal liabilities, as well as the intermediate and incidental matters tending to the accomplishment or promotion of these two principal ends."

In U. S. v. Pusey [Id. 16,098], in the circuit court for the Eastern district of Michigan, the 44th section of the present bankruptcy act, which provides that a debtor or bankrupt who shall, with intent to defraud his creditors, within three months next before the commencement of proceedings in bankruptcy, dispose of, otherwise than by bona fide transactions in the ordinary way of his trade, any of his goods which have been obtained on credit and remain unpaid for, shall be deemed guilty of a misdemeanor, and on conviction be punished by imprisonment, came under consideration. After the defendant had been tried and convicted of an offence against that section, a motion in arrest of judgment was made, on the ground that the above provision was unconstitutional and void, because it assumed to punish an offence committed before the commencement of proceedings in bankruptcy, and was, therefore, not a law necessary and proper for carrying into execution the power of congress to establish uniform laws on the subject of bankruptcies. The motion was overruled. In the decision of the court, it is said: "One object to be attained by the enactment of a bankrupt law is the appropriation of the debtor's property to the payment of his debts. And this may be said to be the principal or primary object of all such laws. * * * From what has been said and written by early commentators, and by high authority, in regard to the power of congress over bankruptcies, as well as from the nature of the subject itself, there is some ground for assuming that it extends to the regulation of all the relations of debtor and creditor, for the prevention of frauds and otherwise, to the end of placing all creditors of the same debtor, not expressly preferred, upon one broad basis of equality, and of securing the honest appropriation of a debtor's property, not expressly exempted, to the payment of his debts, either with or without the commission of an act of bankruptcy, or whether bankruptcy was or was not in contemplation. But in this case it is unnecessary to go to that extent, and I, therefore, leave the point undecided."

The principle on which the law of bankruptcy has, in legislation, been founded, is, that when a man becomes insolvent, the property then remaining to him rightfully belongs to his creditors, and ought to be distributed ratably among them towards satisfaction of their claims, the debtor himself being released from future liability in respect of his debts, upon giving all the aid in his power towards the realization and distribution of his estate for the benefit of his creditors, and fulfilling the other conditions prescribed by the law for his discharge. Rob. Bankr. 1. From the time when the first bankruptcy act was enacted in England (34 & 35 Hen. VIII. c. 4), it was always a feature of the law, that the estate of the bankrupt was taken by public authority and distributed ratably among his creditors. Provision for the relief of bankrupts from their debts was first introduced by the statute of 4 Anne, c. 17. The statute of 6 Geo. IV. c. 16, in 1825, first introduced the principle of deeds of arrangement, whereby the property of an insolvent trader was made applicable for the common benefit of his creditors, without his going through proceedings in bankruptcy. But the assent of all his creditors was made practically necessary to the operation of the deed, for, although a specified majority in number and value of the creditors, could, after bankruptcy, accept a composition in satisfaction of their debts, on which the commission could be superseded, the bankrupt was not thereby released from the demands of dissenting creditors. By the act of 1849 (12 & 13 Vict. c. 106), the debtor, when he found himself insolvent, was enabled to place himself and his property under the protection of the court, and, through its intervention, without actual bankruptcy, to effect an arrangement for the payment or compromise of his debts, binding on all his creditors, provided he could obtain the assent of a majority of three-fifths in number and value; or if the debtor, without recourse to the court, could obtain the assent of six-sevenths in number and value of his creditors to an arrangement involving the distribution of his entire estate, this was also made binding on all the creditors. This act also made a composition, accepted by nine-tenths of the creditors of a bankrupt, after his last examination, binding on all the creditors, so that, on the acceptance of such composition, the bankruptcy could be annulled. This act was interpreted by the courts as not binding dissenting creditors by any arrangement which did not comprise a cession of the whole of the bankrupt's property; and, therefore, arrangements by way of composition, without a cessio bonorum, were impossible under it when any creditor dissented. The act of 1861 (24 & 25 Vict. c. 134) provided for allowing to the debtor a limited period to obtain the assent of his creditors to an arrangement without the risk of bankruptcy, and did not require a cessio bonorum to make an arrangement or composition binding on dissenting creditors, but empowered a majority in number and three-fourths in value of the creditors to bind the minority. Abuses under this act led to the passing of the act of 1868 (31 & 32 Vict. c. 104), requiring, for the validity of composition deeds, the fullest discovery

by the debtor of his property and liabilities, and made it compulsory on creditors to prove their debts by affidavit, and gave enlarged powers to non-assenting creditors to ascertain the real state of the debtor's property, as well as his debts and liabilities. The act of 1869 (32 & 33 Vict. c. 71), which is the act now in force in England, contains provisions for regulating (1) the liquidation by arrangement, of the affairs of debtors, and (2) compositions with their creditors, without resort to bankruptcy. In liquidation by arrangement, all the property of the bankrupt is vested in a trustee without a deed, and by virtue of his appointment by the creditors, to be administered in the same way as in the case of actual bankruptcy. It is, in fact, bankruptcy without petition or adjudication, and a resolution adopting the liquidation by arrangement must be passed at a meeting of creditors, by a majority in number and three-fourths in value of the creditors there assembled personally or by proxy, the majority in value but not in number to include creditors whose debts do not exceed £10. A trustee is to be chosen, and, if thought fit, a committee of inspection, and the resolution, and the debtor's statement of his debts and assets, and the names of the trustee and committee, are to be registered. If it shall appear to the court, on satisfactory evidence, that the liquidation by arrangement cannot proceed without injustice or undue delay to the creditors or the debtor, the court may adjudge the debtor a bankrupt. The composition with creditors provided for by our act of 1874 is adopted from that provided for in the English act of 1869 (section 126). The variations between the two statutes on this subject are not very marked. Our statute requires that there shall be a case of bankruptcy pending. The English statute authorizes a composition without any proceedings in bankruptcy. The English statute requires two meetings of creditors, at the first of which the resolution for the composition must be passed by a majority in number and three-fourths in value of the creditors assembled at the meeting, and at the second of which the resolution must be confirmed by a majority in number and value of the creditors assembled. Our statute requires but one meeting, at which the resolution must be passed by a majority in number and three-fourths in value of the creditors assembled, and then requires that the resolution shall be confirmed by the signatures thereto of the debtor and two-thirds in number and one-half in value of all the creditors. By our statute, the subsequent inquiry as to whether the resolution has been passed in the manner provided, is to be made upon notice to all the creditors and upon hearing. By the English statute, no notice to creditors is required, and no hearing. By the English statute, if the resolution is found to have been so passed, it and the statement of debts and assets are to be registered. By our statute, the court must not only be satisfied that the resolution has

been so passed, but must be satisfied that it is for the best interest of all concerned, before the resolution can be recorded and the statement of debts and assets be filed. There is not, in the English statute, any provision corresponding to that found in our statute, to the effect that every composition shall, subject to the priorities declared, provide for a pro rata payment or satisfaction in money to the creditors, in proportion to the amount of their debts. The English statute provides that, if it appear to the court on satisfactory evidence, that a composition cannot, in consequence of legal difficulties, or for any sufficient cause, proceed without injustice or undue delay to the creditors or to the debtor, the court may adjudge the debtor a bankrupt, and proceedings may be had accordingly. Our statute provides, that if it shall at any time appear to the court, on notice, satisfactory evidence, and hearing, that a composition cannot, in consequence of legal difficulties, or for any sufficient cause, proceed without injustice or undue delay to the creditors or to the debtor, the court may refuse to accept and confirm such composition, or may set the same aside, and that in either case the debtor shall be proceeded with as a bankrupt, in conformity with the provisions of law, and proceedings may be had accordingly. In all other particulars than those thus referred to, the provisions for composition in the two statutes are substantially identical.

It cannot be doubted, that congress, in passing laws on the subject of bankruptcies, is not restricted to laws with such scope only as the English bankruptcy laws had when the constitution was adopted. The authority of text writers, and the adjudged cases cited, and the practical construction of the provision of the constitution, by the fact of the enactment of provisions for voluntary bankruptcy, and for putting into involuntary bankruptcy others than traders, and for granting discharges without the consent of any creditor, are satisfactory evidence that the power to establish laws on "the subject of bankruptcies" gives an authority over the subject, that is not restricted by the limitation found in the English statutes in force when the constitution was adopted. The power given must, indeed, be held to be general, unlimited and unrestricted over the subject.

But the question recurs—what is the subject? The subject is "the subject of bankruptcies." What is "the subject of bankruptcies?" It is not, properly, anything less than the subject of the relations between an insolvent or non-paying or fraudulent debtor, and his creditors, extending to his and their relief. It comprises the satisfaction of the debt for a sum less than its amount, with the relief of the debtor from liability for the unpaid balance, and the right of the creditor to require that the amount paid in satisfaction shall be substantially as great a pro rata share of the prop-

erty possessed by the debtor as it can pay, or can reasonably be expected to pay. The principle of an absolute discharge of the debtor from liability, after his property has been appropriated by his creditors, without requiring the assent of every creditor to such discharge, being admitted as a principle properly forming part of a bankruptcy law, no good reason can be assigned why the assent of every creditor should be required to a composition, if, by the provisions of the composition, and the proceedings under which it is conducted, the property of the debtor is substantially appropriated by his creditors, and each of them obtains substantially as great a pro rata share of such property as it can pay or can reasonably be expected to pay. In every case where there is a cessio bonorum, there are arbitrary exemptions, but still, in substance, the entire property of the debtor is appropriated. And even though there is not, in these provisions for composition, any actual cessio bonorum, through the intervention of an assignee or a trustee, yet, the property of the debtor is, in substance, distributed ratably among his creditors, towards satisfaction of their claims, while he is released from future liability in respect of his debts, upon giving all the aid in his power towards the realization and distribution of his estate for the benefit of his creditors. The creditors are to have notice of the meeting. The debtor must produce at the meeting a statement showing the whole of his debts and assets, and the names and addresses of his creditors. He must be present and answer inquiries. After the resolution for composition is passed, the creditors have another notice, and can be heard, and are afforded an opportunity to satisfy the court that the composition is not for the best interest of all concerned, or that it cannot, without legal difficulties, or for some sufficient reason, proceed without injustice or undue delay to the creditors or to the debtor, in which case it becomes the duty of the court to refuse to accept and confirm the composition. If the debtor, after he has exhibited his statement, and answered the inquiries of his creditors at the meeting, is not substantially appropriating at least all his property to pay his creditors pro rata, by offering a composition which will pay at least as much as such property can pay, or can reasonably be expected to pay, then the composition is not for the best interest of all concerned, and cannot proceed without injustice to the creditors, and will not be confirmed by the court. The rights and interests of the dissenting or non-assenting creditors are under the protection of the court, and the affirmative votes of the assenting creditors are of no avail to affect such rights and interests, if the composition be not for the best interest of the other creditors, or be unjust towards them; and they have an opportunity to make this appear.

Then, by the provision that the composition shall not affect or prejudice the rights of any creditors whose names and addresses, and the amounts of whose debts, are not shown in the statement of the debtor produced at the meeting, and the further provision for a hearing on notice to all the creditors, the rights of all creditors to see that a sufficient composition is offered, in view of the amount of assets, are sufficiently guarded.

In view of all these considerations, how can it be said that these provisions for composition do not relate to the "subject of bankruptcies?" They relate to the subject of debts owing by a debtor to creditors, and to the relation of the debtor to his creditors, in view of his assets and of such debts. They place the subject under the jurisdiction of the court of bankruptcy, and require a petition in bankruptcy to be pending, either voluntary, which requires prior insolvency to be alleged, or involuntary, which requires the commission of a prior act of bankruptcy to be alleged; and, in either case, proceedings for composition are necessarily predicated on insolvency or existing inability to pay the debts in full. But, even if a more restricted meaning be given to the expression "subject of bankruptcies," there is, within the scope of the discretionary power possessed by congress, of choosing the means to accomplish the end, a substantial appropriation of the existing property of the debtor towards all the debts due by him. There is not, as there is in proceedings carried through in bankruptcy, a pro rata payment on the debts only of those creditors who prove their debts, but all creditors are to have a payment pro rata. It must, therefore, be held, that the statutory provisions for composition are not open to the objection, that they are not warranted by the constitution.

It is further objected, that the composition in this case provides for payment in notes, and not money, and is, therefore, not authorized by the statute. I do not think that the composition, properly interpreted, provides for a payment otherwise than in money. The creditors, by it, agree to accept thirty cents on the dollar, in full satisfaction and discharge of their debts, to be paid as prescribed, namely, ten per cent. thereof within ten days after the recording of the resolution, and the filing of the statement, ten per cent. thereof in four months from September 1st, 1874, and ten per cent. thereof in eight months from September 1st, 1874, notes satisfactorily indorsed to be given for the four and eight months payments. In default thereof, that is, in default of the making of any of the payments of the thirty per cent. at the times prescribed, the agreement for compromise is to be void and of no effect towards those creditors in respect to whom any such default happens.

A composition providing for a payment or satisfaction in "money," is placed in contradistinction to one for payment or satisfaction in property. It could scarcely have been intended that a composition should exclude all deferring of payments. Voluntary compositions almost always provide for successive payments at stated times. A composition may well provide for successive payments in money at stated future times, and, if so, there can be no good reason why the stated payments may not be evidenced by notes, to be indorsed, if desired, the notes being payable in money. A note is not payment, especially where, as in the present case, it is provided that the payments evidenced by the notes must be made or the agreement will be void.

Although the English statute does not contain the provision that the composition shall provide for payment in money, yet no inference can be drawn from the fact that such provision is inserted in our statute, that it was intended to prevent the payment of the money in instalments. Our statute provides for the making of rules and regulations of court in relation to proceedings of composition. None such have yet been made. But, as our statute in relation to proceedings of composition follows very closely the English statute of 1869, it is proper to recur to the English bankruptcy rules of January 1st, 1870, promulgated by the lord chancellor and the chief judge in bankruptcy, in pursuance of sections 78 and 126 of the English act of 1869, and which rules were in force when our statute was passed, as showing what was understood to be within the scope of a "composition." Rule 279 of the English rules provides, that, where the creditors pass a resolution for composition, they shall specify in the resolution "the amount of the composition, and the instalments and dates at which the same shall be payable, and they may name some person as trustee for receipt and distribution of the composition and any negotiable securities which may be given for the same." Rule 280 provides, that, "instead of specifying by their resolution the security to be given. the creditors may resolve that the composition, or some part or instalment thereof, shall be secured in such manner as may be approved by a creditor or creditors to be named by the resolution." Rule 281 provides, that the resolution "may provide that the terms of the composition be embodied in a deed between such parties, and containing such covenants for payment of the composition, and for protecting and releasing the debtor, and such other covenants for securing the composition, either by assignment of property or by inspection of the debtor's business, or otherwise, as the nature of the case may require, and as the resolution may specify in particular or general terms." It is quite apparent, from these rules, that the idea of a composition, under

the English statute, and under the rules prescribed concerning compositions, admits the idea of a payment of money by instalments at future dates, and the taking, in addition, of security that such payments shall be made. The word "composition," even in connection with the provision that the payment shall be in money, cannot, under our statute, have a more restricted meaning.

The embarrassment as to the present resolution is, that it provides that the notes shall be "satisfactorily indorsed." No indorser is named, nor is it provided that the indorser shall be named by a creditor or creditors. To whom is the indorser to be satisfactory? It cannot be proper to leave it open to each creditor to name the indorser who will be satisfactory to him. It is not proper to throw upon the court the responsibility of saying who shall be a satisfactory indorser. The resolution should provide for ascertaining the satisfactory character of the indorser, either by naming him or by providing for his being definitely named. The interests of creditors not assenting are involved, and they are entitled to have something more definite in this respect than this resolution contains. Since this matter was argued, and in view of a suggestion made by the court on the argument, that the resolution was too indefinite in this respect, a paper has been presented to me signed by Mr. Michael Doyle, a merchant, consenting to indorse the notes provided for by the composition, and signed also by sundry creditors of the debtors, agreeing to accept such indorsement as the satisfactory indorsement mentioned in the resolution. The statute provides for adding to or varying the provisions of a composition, by a resolution passed in the manner and under the circumstances provided for passing the original resolution, and for presenting such additional resolution to the court in the same manner, and proceeding with it in the same way and with the same consequences, as the original resolution. This course can be pursued in regard to naming Mr. Doyle as indorser, but the defect cannot be supplied in any other way.

The resolution of composition in this case was passed on the 31st of August, 1874, at a meeting adjourned from August 26th. The meeting to inquire whether the resolution had been duly passed was held on the 16th of September, and, by adjournment, on the 18th. On the 5th of September, the court made an order that the marshal forthwith take possession provisionally of all the property and effects of the debtors and safely keep the same until the further order of the court. This was done on the petition of A. T. Stewart & Co. On the 10th of September, on the application of the debtors and of sundry creditors of theirs, an order was made that the debtors, under the direction of the marshal as the messenger of the court, should be allowed to proceed with the sale

of the stock of dry goods belonging to their estate, at retail and for cash, and that the proceeds of such sales should be paid to the said messenger daily and every day, or that said messenger, either by himself or by deputy appointed by him, should receive the proceeds of such sales as the same should be made, and that such proceeds, after deducting therefrom the expenses attending such sales and of clerk hire, should be deposited by him daily in bank to the credit of the estate of the said debtors. At the time the resolution of composition was passed, the debtors were in possession of their property. The usual injunction in involuntary cases had, when the petition was filed, been issued, restraining them from disposing of their property. This was done on the petition of some of the creditors who brought the involuntary petition. The order for the marshal to take possession was not made until after the resolution for composition was passed. The creditors who passed the resolution acted, therefore, in reference to the case under its then existing status, on the view that the debtors were and were to continue in possession of their property, and were only under an injunction which the attorneys for the petitioning creditors might consent at any time to vacate. The creditors did not, at the meeting, provide for securing the payment otherwise than by indorsement of the notes to be given. They provided for no assignment of property and for no inspection of the debtor's business. It must, therefore, be intended, that they were willing that the debtors should, if the attorneys for the petitioning creditors would consent to the dissolution of the injunction referred to, deal with their property as their own, subject only to the provisions of the composition, and subject to the power given to the court by the statute to enforce in a summary manner the provisions of the composition, and to the further power given to the court to refuse to accept and confirm the composition or to set it aside, on satisfactory evidence in respect of legal difficulties, injustice or undue delay. There seems, therefore, on the facts of this case as now presented, no other reasons being urged against the acceptance and confirmation of the composition than those before mentioned, no good ground for saying that the fact, that the consequence of confirming the composition may be to give into the possession of the debtors the property which represents their assets, is any sufficient reason for not confirming the composition. The creditors were at liberty, in the resolution for composition, to make provision on the subject, and chose to omit to do so.

For the reason before stated in regard to the indorsement of the notes, the resolution, as it stands, cannot be confirmed, but another meeting of creditors may be called, at which the provisions of the composition may be added to or varied.

The meeting directed in the foregoing opinion was held, and the proceedings of the meeting were presented to the court.

BLATCHFORD, District Judge. The proceedings of a meeting of the creditors of the alleged bankrupts, called for the purpose of adding to or varying the provisions of a composition previously accepted by the creditors of the alleged bankrupts, are now presented to the court. At the meeting a resolution was duly passed, varying the provisions of the composition previously accepted, and such resolution has been duly confirmed. On presenting such resolution to the court, with the statement of the debts and assets, the alleged bankrupts ask that the resolution be recorded and the statement be filed. The statute provides that the creditors may, by resolution passed in the manner and under the circumstances provided in relation to an original resolution for composition, add to or vary the provisions of any composition previously accepted by them, without prejudice to any persons taking interests under such provisions, who do not assent to such addition or variation. It further provides that "any such additional resolution" passed in the manner and under the circumstances aforesaid, "shall be presented to the court in the same manner, and proceeded with in the same way and with the same consequences as the resolution by which the composition was accepted in the first instance." This requires that after the resolution varying the provisions of the composition previously accepted shall have been passed and confirmed and presented to the court, it shall be "proceeded with in the same way" as the original resolution was proceeded with. In regard to the original resolution, the statute expressly requires that the court shall, "upon notice to all the creditors of the debtor, of not less than five days, and upon hearing, inquire whether such resolution has been passed in the manner directed by this section." It follows that this second resolution cannot now be recorded, but that a meeting on notice to all the creditors must be called, in like manner as a second meeting was called in respect to the original resolution, to inquire whether the second resolution has been passed in the manner directed by the statute. As it appears that creditors who attended at the meeting where the second resolution was passed, objected to the passing of such resolution, for reasons then and there stated by them, such creditors must have notice of the time and place of presenting to the court the proceedings of the meeting now to be called, so that they may be heard; and they will then be at liberty to present to the court, as will any other creditor, any papers which are relevant, to show that the composition is one which ought not to be sanctioned by the court.

[NOTE. The resolutions of composition were affirmed by the district court. Case No. 11,674.

The cause was then taken to the circuit court on a petition of review, when the judgment of the district court was affirmed. Id. 11,675.]