# UNITED STATES *v.* BEKINS ET AL., TRUSTEES, ET AL.

# LINDSAY-STRATHMORE IRRIGATION DISTRICT *v.* BEKINS ET AL., TRUSTEES, ET AL.

Nos. 757 and 772. Argued April 7, 1938.—Decided April 25, 1938.

*Mr. Hatton W. Sumners* for the Committee on Judiciary of the House of Representatives of the United States, as *amicus curiae,* by special leave of Court.

30

32

*Solicitor General Jackson,* with whom *Assistant Attorney General Whitaker,* and *Messrs. Vincent N. Miles, Warner W. Gardner,* and *Henry A. Julicher* were on the brief, for the United States in No. 757.

34

38

*Acting Solicitor General Bell* filed a memorandum for the United States in No. 757.

*Messrs. Guy Knupp* and *James R. McBride* for appellant in No. 772.

*Messrs. W. Coburn Cook* and *Charles L. Childers,* with whom *Mr. Maurice E. Harrison* was on the briefs, for appellees.

40

44

By leave of Court, briefs of *amici curiae* were filed by *Messrs. U. S. Webb*, Attorney General of California, *Greek L. Rice*, Attorney General of Mississippi, *Ray McKittrick*, Attorney General of Missouri, *Gray Mashburn*, Attorney General of Nevada, *Frank H. Patton*, Attorney General of New Mexico, *I. H. Van Winkle*, Attorney General of Oregon, and *Ray E. Lee*, Attorney

General of Wyoming, on behalf of those States; *Messrs. G. W. Hamilton,* Attorney General of Washington, and *Fred J. Cunningham,* on behalf of the State of Washington; and *Messrs. Jack Holt,* Attorney General of Arkansas, and *Chas. D. Frierson,* on behalf of the State of Arkansas and certain drainage districts thereof, all in support of appellant in No. 772; by *Messrs. Cary D. Landis,* Attorney General of Florida, and *Giles J. Patterson,* on behalf of the State of Florida, in support of appellant in No. 757; and by *Messrs. Francis V. Keesling* and *Charles L. Childers,* on behalf of the West Coast Life Ins. Co., in support of appellees.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

These are direct appeals from the judgment of the District Court for the Southern District of California under the Act of August 24, 1937, c. 754, 50 Stat. 751. They present the question of the constitutional validity of the Act of August 16, 1937, 50 Stat. 653, amending the Bankruptcy Act by adding Chapter X providing for the composition of indebtedness of the taxing agencies or instrumentalities therein described. A certificate was issued to the Attorney General and the United States intervened. The District Court held the statute invalid as applied to the appellant and dismissed its petition for composition. The court considered itself bound by the decision in *Ashton* v. *Cameron County District,* 298 U. S. 513.

Appellant, the Lindsay-Strathmore Irrigation District, was organized in the year 1915 under the California Irrigation District Act of March 31, 1897 (Cal. Stat. 1897, p. 254). It comprises about 15,260 acres in Tulare County. It is an irrigation district and taxing agency created for the purpose of constructing and operating irrigation projects and works devoted to the improvement of lands for

agricultural purposes. On September 21, 1937, it presented its petition for the confirmation of a plan of composition. The petition alleged insolvency; that its indebtedness consisted of outstanding bonds aggregating $1,427,000 in principal, with unpaid interest of $439,085.15; that no interest or principal falling due since July 1, 1933, had been paid; that the low price of agricultural products had prevented the owners of land within the irrigation district from meeting their assessments; that upon the assessment levied by the District in the year 1932 there was a delinquency of 47 per cent. and that since that year there had been levied only an assessment of sufficient amount to maintain and operate its works; that the District's plan for the composition of its debts provided for the payment in cash of a sum equal to 59.978 cents for each dollar of the principal amount of its outstanding bonds in satisfaction of all amounts due; that creditors owning about 87 per cent. in the principal amount of the bonds had accepted the plan and consented to the filing of the petition; and that payment of the amount required was to be made from the proceeds of a loan which the Reconstruction Finance Corporation had agreed to make upon new refunding serial bonds equal to the amount borrowed and bearing interest at four per cent.

The District Court approved the petition as filed in good faith and directed the creditors to show cause why an injunction should not issue staying the commencement of suits upon the securities affected by the plan. The appellees as bondholders appeared and moved to dismiss the petition upon the ground that Chapter X of the Bankruptcy Act violated the Fifth and Tenth Amendments of the Federal Constitution. It appeared from the return to the order to show cause that these creditors had obtained an alternative writ of mandate from the state court directing the county board of supervisors to levy an assessment upon the lands within the District sufficient to pay

the amounts due the complaining creditors, and that the proceedings in that court had been suspended pending the proceeding in the bankruptcy court.

*First.* Chapter X of the Bankruptcy Act is limited to voluntary proceedings for the composition of debts. Aside from the question as to the power of the Congress to provide this method of relief for the described taxing agencies, it is well settled that a proceeding for composition is in its nature within the federal bankruptcy power. Compositions were authorized by the Bankruptcy Act of 1867, as amended by the Act of 1874, c. 390, § 17, 18 Stat. 182. It is unnecessary to the validity of such a proceeding that it should result in an adjudication of bankruptcy. *In re Reiman,* 20 Fed. Cas. 490, 496, 497; *Continental National Bank* v. *Chicago, R. I. & P. Ry. Co.,* 294 U. S. 648, 672, 673. In the *Continental Bank* case, in the course of a full consideration of the scope of the federal bankruptcy power and of the evolution of its exercise, we said:

"The constitutionality of the old provision for a composition is not open to doubt. *In re Reiman,* 20 Fed. Cas. 490, 496–497, cited with approval in *Hanover National Bank* v. *Moyses, supra.* [186 U. S. at p. 187.] That provision was there sustained upon the broad ground that the 'subject of bankruptcies' was nothing less than 'the subject of the relations between an insolvent or nonpaying or fraudulent debtor, and his creditors, extending to his and their relief.' That it was not necessary for the proceedings to be carried through in bankruptcy was held not to warrant the objection that the provision did not constitute a law on the subject of bankruptcies."

*Second.* It is unnecessary to consider the question whether Chapter X would be valid as applied to the irrigation district in the absence of the consent of the State which created it, for the State has given its consent. We think that this sufficiently appears from the statute of California enacted in 1934. Laws of 1934, Ex. Sess.,

ch. 4. This statute (§ 1) adopts the definition of "taxing districts" as described in an amendment of the Bankruptcy Act, to wit Chapter IX approved May 24, 1934, and further provides that the Bankruptcy Act and "acts amendatory and supplementary thereto, as the same may be amended from time to time, are herein referred to as the 'Federal Bankruptcy Statute'." Chapter X of the Bankruptcy Act is an amendment and appears to be embraced within the state's definition. We have not been referred to any decision to the contrary. Section 3 of the state act then provides that any taxing district in the State is authorized to file the petition mentioned in the "Federal Bankruptcy Statute." Subsequent sections empower the taxing district upon the conditions stated to consummate a plan of readjustment in the event of its confirmation by the federal court. The statute concludes with a statement of the reasons for its passage, as follows:.

"There exist throughout the State of California economic conditions which make it impossible for property owners to pay their taxes and special assessments levied upon real or taxable property. The burden of such taxes and special assessments is so onerous in amount that great delinquencies have occurred in the collection thereof and seriously affect the ability of taxing districts to obtain the revenue necessary to conduct governmental functions and to pay obligations represented by bonds. It is essential that financial relief, as set forth in this act, be immediately afforded to such taxing districts in order to avoid serious impairment of their taxing systems, with consequent crippling of the local governmental functions of the State. This act will aid in accomplishing this necessary result and should therefore go into effect immediately."

While the facts thus stated related to conditions in California, similar conditions existed in other parts of the

country and it was this serious situation which led the Congress to enact, Chapter IX and later Chapter X.[1]

Our attention has been called to the difference between § 80 (k) of Chapter IX and § 83 (i) of Chapter X of the Bankruptcy Act in the omission from the latter of the provision requiring the approval of the petition by a governmental agency of the State whenever such approval is necessary by virtue of the local law. We attach no importance to this omission. It is immaterial, if the consent of the State is not required to make the federal plan effective, and it is equally immaterial if the consent of the State has been given, as we think it has in this case. It should also be observed that Chapter X, § 83 (e) provides as a condition of confirmation of a plan of composition that it must appear that the petitioner "is authorized by law to take all action necessary to be taken by it to carry out the plan," and, if the judge is not satisfied on that point as well as on the others mentioned, he must enter an order dismissing the proceeding. The phrase "authorized by law" manifestly refers to the law of the State.

*Third.* We are thus brought to the inquiry whether the exercise of the federal bankruptcy power in dealing with a composition of the debts of the irrigation district, upon its voluntary application and with the State's consent, must be deemed to be an unconstitutional interference with the essential independence of the State as preserved by the Constitution.

In *Ashton* v. *Cameron County District, supra,* the court considered that the provisions of Chapter IX authorizing

---

[1] See Hearings before a Subcommittee of the Senate Committee on the Judiciary on S. 1868 and H. R. 5950, 1934, 73rd Cong., 2nd Sess.; Hearings before the House Committee on the Judiciary on H. R. 1670, etc., 1933, 73rd Cong., 1st Sess.; *Ashton* v. *Cameron County District,* 298 U. S. 513, 533, 534.

the bankruptcy court to entertain proceedings for the "readjustment of the debts" of "political subdivisions" of a State "might materially restrict its control over its fiscal affairs," and was therefore invalid; that if obligations of States or their political subdivisions might be subjected to the interference contemplated by Chapter IX, they would no longer be "free to manage their own affairs."

In enacting Chapter X the Congress was especially solicitous to afford no ground for this objection. In the report of the Committee on the Judiciary of the House of Representatives,[2] which was adopted by the Senate Committee on the Judiciary,[3] in dealing with the bill proposing to enact Chapter X, the subject was carefully considered. The Committee said:

"Compositions are approvable only when the districts or agencies file voluntary proceedings in courts of bankruptcy, accompanied by plans approved by 51 per cent of all the creditors of the district or agency, and by evidence of good faith. Each proceeding is subject to ample notice to creditors, thorough hearings, complete investigations, and appeals from interlocutory and final decrees. The plan of composition cannot be confirmed unless accepted in writing by creditors holding at least 66⅔ percent of the aggregate amount of the indebtedness of the petitioning district or taxing agency, and unless the judge is satisfied that the taxing district is authorized by law to carry out the plan, and until a specific finding by the court that the plan of composition is fair, equitable, and for the best interests of the creditors. . . .

"The Committee on the Judiciary is not unmindful of the sweeping character of the holding of the Supreme Court above referred to [in the *Ashton* case], and believes

[2] H. Rep. No. 517, 75th Cong., 1st Sess.
[3] Sen. Rep. No. 911, 75th Cong., 1st Sess.

that H. R. 5969 is not invalid or contrary to the reasoning of the majority opinion. . . .

"The bill here recommended for passage expressly avoids any restriction on the powers of the States or their arms of government in the exercise of their sovereign rights and duties. No interference with the fiscal or governmental affairs of a political subdivision is permitted. The taxing agency itself is the only instrumentality which can seek the benefits of the proposed legislation. No involuntary proceedings are allowable, and no control or jurisdiction over that property and those revenues of the petitioning agency necessary for essential governmental purposes is conferred by the bill. . . .

"There is no hope for relief through statutes enacted by the States, because the Constitution forbids the passing of State laws impairing the obligations of existing contracts. Therefore, relief must come from Congress, if at all. The committee are not prepared to admit that the situation presents a legislative no-man's land. . . . It is the opinion of the committee that the present bill removes the objections to the unconstitutional statute, and gives a forum to enable those distressed taxing agencies which desire to adjust their obligations and which are capable of reorganization, to meet their creditors under necessary judicial control and guidance and free from coercion, and to affect such adjustment on a plan determined to be mutually advantageous."

We are of the opinion that the Committee's points are well taken and that Chapter X is a valid enactment. The statute is carefully drawn so as not to impinge upon the sovereignty of the State. The State retains control of its fiscal affairs. The bankruptcy power is exercised in relation to a matter normally within its province and only in a case where the action of the taxing agency in carrying out a plan of composition approved by the bankruptcy court is authorized by state law. It is of the es-

52

sence of sovereignty to be able to make contracts and give consents bearing upon the exertion of governmental power. This is constantly illustrated in treaties and conventions in the international field by which governments yield their freedom of action in particular matters in order to gain the benefits which accrue from international accord. Oppenheim, International Law, 4th ed., vol. 1, §§ 493, 494; Hyde, International Law, vol. 2, § 489; *Perry* v. *United States,* 294 U. S. 330, 353; *Steward Machine Co.* v. *Davis,* 301 U. S. 548, 597. The reservation to the States by the Tenth Amendment protected, and did not destroy, their right to make contracts and give consents where that action would not contravene the provisions of the Federal Constitution. The States with the consent of Congress may enter into compacts with each other and the provisions of such compacts may limit the agreeing States in the exercise of their respective powers. Const., Art. I, § 10, subd. 3. *Poole* v. *Fleeger,* 11 Pet. 185, 209; *Rhode Island* v. *Massachusetts,* 12 Pet. 657, 725; *Hinderlider* v. *La Plata River Co., post,* p. 92. The State is free to make contracts with individuals and give consents upon which the other contracting party may rely with respect to a particular use of governmental authority. See *Fletcher* v. *Peck,* 6 Cranch 87, 137; *New Jersey* v. *Wilson,* 7 Cranch 164; *Dartmouth College* v. *Woodward,* 4 Wheat. 518, 643, 644; *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420, 549; *Jefferson Branch Bank* v. *Skelly,* 1 Black 436, 446. While the instrumentalities of the national government are immune from taxation by a State, the State may tax them if the national government consents (*Baltimore National Bank* v. *State Tax Comm'n,* 297 U. S. 209, 211, 212) and by a parity of reasoning the consent of the State could remove the obstacle to the taxation by the federal government of state agencies to which the consent applied.

Nor did the formation of an indestructible Union of indestructible States make impossible coöperation between the Nation and the States through the exercise of the power of each to the advantage of the people who are citizens of both. We had recent occasion to consider that question in the case of *Steward Machine Co.* v. *Davis, supra,* in relation to the operation of the Social Security Act of August 14, 1935. 49 Stat. 620. The question was raised with special emphasis in relation to § 904 of the statute and the parts of § 903, complementary thereto, by which the Secretary of the Treasury is authorized to receive and hold in the Unemployment Trust Fund all moneys deposited therein by a state agency for a state unemployment fund and to invest in obligations of the United States such portion of the Fund as is not in his judgment required to meet current withdrawals. The contention was that Alabama in consenting to that deposit had "renounced the plenitude of power inherent in her statehood." 301 U. S. at pp. 595, 596. We found the contention to be unsound. As the States were at liberty, upon obtaining the consent of Congress to make agreements with one another, we saw no room for doubt that they may do the like with Congress if the essence of their statehood is maintained without impairment. And we added that "Nowhere in our scheme of government—in the limitations express or implied of our federal constitution—do we find that she [the State] is prohibited from assenting to conditions that will assure a fair and just requital for benefits received."

In the instant case we have coöperation to provide a remedy for a serious condition in which the States alone were unable to afford relief. Improvement districts, such as the petitioner, were in distress. Economic disaster had made it impossible for them to meet their obligations. As the owners of property within the boundaries of the district could not pay adequate assessments, the power of

54

taxation was useless. The creditors of the district were helpless. The natural and reasonable remedy through composition of the debts of the district was not available under state law by reason of the restriction imposed by the Federal Constitution upon the impairment of contracts by state legislation. The bankruptcy power is competent to give relief to debtors in such a plight and, if there is any obstacle to its exercise in the case of the districts organized under state law it lies in the right of the State to oppose federal interference. The State steps in to remove that obstacle. The State acts in aid, and not in derogation, of its sovereign powers. It invites the intervention of the bankruptcy power to save its agency which the State itself is powerless to rescue. Through its coöperation with the national government the needed relief is given. We see no ground for the conclusion that the Federal Constitution, in the interest of state sovereignty, has reduced both sovereigns to helplessness in such a case.

*Fourth.* As the bankruptcy power may be exerted to give effect to a plan for the composition of the debts of an insolvent debtor, we find no merit in appellant's objections under the Fifth Amendment. *In re Reiman, supra; Continental National Bank* v. *Chicago, R. I. & P. Ry. Co., supra.*

The judgment of the District Court is reversed and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE MCREYNOLDS and MR. JUSTICE BUTLER are of the opinion that the principle approved in *Ashton* v. *Cameron County District,* 298 U. S. 513, is controlling here and requires affirmation of the questioned decree.

MR. JUSTICE CARDOZO took no part in the consideration and decision of this case.