## In re LINDSAY–STRATHMORE IRR. DIST.

### No. 4575.

District Court, S. D. California, N. D. Jan. 10, 1939.

Mitchell, Silberberg, Roth & Knupp, and Guy Knupp, all of Los Angeles, Cal., and James R. McBride, of Lindsay, Cal., for petitioner.

W. Coburn Cook, of Turlock, Cal., and Charles L. Childers, of El Centro, Cal., for respondents Milo W. Bekins et al.

O. G. Hoegstedt, of Los Angeles, Cal., for respondent Marion A. Maxwell, etc.

McCORMICK, District Judge.

Lindsay-Strathmore Irrigation District, herein referred to as "the District," an insolvent taxing agency in the State of California, filed in this court on September 21, 1937, its petition for confirmation of a plan of composition and readjustment of its outstanding bond indebtedness. The proceeding is based upon Chapter 9 of the Bankruptcy Act, 52 Stat. 939, § 81 et seq., 11 U.S.C.A. § 401 et seq. The constitution·

ality of the Congressional legislation which is invoked by the District in this proceeding is established beyond any doubt. Lindsay-Strathmore Irrigation District v. Bekins et al., 304 U.S. 27, 58 S.Ct. 811, 82 L. Ed. 1137. The area of the District, situate entirely in the County of Tulare, State of California, is almost entirely devoted to the production of citrus fruits, about 90 per cent. of the income of the land owners therein being derived from such activities.

The District has, pursuant to applicable laws of the State of California, issued its bonds in the aggregate principal amount of approximately $1,427,000, which are uncancelled. The bonds bear interest at the rate of 6 per cent. per annum, and on account of the general financial depression which has existed throughout the United States, and the particular agricultural situation that has prevailed in the District, there has been no payment made upon the principal or interest of the bonds since the year 1933, and both principal and interest have been in default since July 1 of that year. The total amount of defaulted debt is now about $968,000.

The record shows that beginning with the year 1930, which was the last year in which the fruit growers in the District received satisfactory prices for their products, until financial aid was available to the District under transactions with the Reconstruction Finance Corporation, which for brevity is herein called "R. F. C.", the percentages of delinquencies in the assessments, which, under applicable California statutes, are a bond service source, ranged from 12 per cent. to 47 per cent. of the entire assessments levied, and that as the result of such recurring unredeemed delinquencies the District has acquired and now owns approximately one-third of the area within the District. Thus as a result of the general depleted condition of the District, two-thirds of the lands therein were expected to bear financial burdens, including the bond service requirements, of the entire area of the District. This was obviously impossible, by reason of low levels of prices for farm products and the consequent deflation in land values, which the evidence shows has existed and to a substantial extent continues at this time.

There is little need of further mention of the District's financial plight and its complete insolvency if the old bond debt structure continues. It is conceded by bondholders who are opposing the plan of debt composition before this court that the District could not now pay or meet the obligations of all of the uncancelled bonds. Shortly after the default occurred in the bond indebtedness, a careful appraisal of the District was made under authority of the R. F. C. to ascertain the ability of the District to sustain its bond indebtedness, and it was determined that the District could support and repay no bond debt in excess of approximately $895,000. It is upon the basis of such appraisal that R. F. C. agreed to loan $859,000 for the benefit of the District and for the purpose of enabling the District to reduce and refinance its outstanding bond indebtedness by purchasing its outstanding bonds at the price stated in the plan set out in the petition herein.

The plan which this court is asked to confirm is in brief that the District will pay 59.978 cents for each dollar of the principal amount of each outstanding bond, in full satisfaction and discharge of all obligations of the bond, with certain deductions for certain missing coupons if not surrenderable with the bonds. It is considered unnecessary to detail further the plan of settlement, as there is no substantial issue upon its clarity and terms as stated in the petition of the District on file in this court and as shown by the records before us.

The plan has been regularly submitted to the bondholders, pursuant to applicable statutes of the State of California governing irrigation districts within the state, and bondholders of more than 87 per cent. in bond value have voluntarily accepted it and sold their bonds to a trustee for the R. F. C., and the R. F. C., which at present controls all of the bonds bought from the original owners or their agents, has also approved the plan and has consented to its confirmation by this court.

The money with which the District is to consummate the plan is raised by transactions between the R. F. C. and the District which are shown by documents which have been introduced in evidence. It is clear that the lending agency of the United States, the R. F. C., agreed to loan and has already partially advanced for the benefit of the District the amount of money sufficient to purchase all outstanding bonds at the price stated in the plan, and the crucial matter to be ascertained relating to the advancement of the money for the benefit of the District and those financially involved with it is the intent of the contracting parties as it is shown by the writings and

transactions executed by them respectively and passing between them. The mere use of terms in the writings by which the acquisition and control of bonds was effected, such as "loan," "pledge," and "collateral security," does not ex proprio vigore determine the contractual relationship of the parties in interest regarding the bonds affected by the plan under consideration or the present status of the bonds of the District. The intent of the parties to a contract is not to be determined by the "label" of the agreement, but rather it is to be gathered by considering all of the acts, statements and writings which go to make up the contract (Ketchum v. Duncan, 96 U. S. 659, 24 L.Ed. 868; Slupsky v. Westinghouse Electric & Mfg. Co., 8 Cir., 1935, 78 F.2d 13), and if such rule is applied to the entire record before us, we think it clear that the R. F. C. loaned its money for the benefit of the District and that the District accepted the financial help from R. F. C. with the joint central purpose and mutual intent that all outstanding bonds be kept alive until such time as R. F. C. determined that the project of bond debt reduction agreed to had been attained, and in the interim, so as to more completely safeguard the R. F. C. loan and also to prevent frustration of the debt reduction scheme, the parity of rights of consenting and nonconsenting bondholders be maintained. This situation continues, notwithstanding the fact that the bond reduction project has been carried on since the year 1933 and is still only partially completed. Subparagraph (j), Section 83, Chapter 9 of the Bankruptcy Act, as amended by Act of June 22, 1938, § 3(b), 52 Stat. 940, 11 U.S. C.A. § 403(j).

It is thus made clear to us from the entire record that it is only upon the accomplishment of the plan that the bonds surrendered to the trustee of R. F. C. are to be cancelled and exchanged for new 4 per cent. refunding bonds or are to become functus officio. In other words, until the objective of the contract between the governmental emergency lending agency, the impoverished irrigation district, and its affected bond owners is attained, the bonds which were surrendered as greater protection to the loan by R. F. C. are to remain existing obligations of the District to the face value thereof and must be so considered in determining the percentage of debts affected by the plan under Chapter 9 of the Bankruptcy Act.

The method of bond debt composition and refinancing in this District is similar to that pursued in Re Drainage District No. 7, 25 F.Supp. 372, decided in the United States District Court for the Eastern District of Arkansas on August 25, 1938. In the Arkansas proceeding, the court substantially held that the intent of the contract under which R. F. C. extended the loan to the drainage district involved therein was that all of the bonds sought to be retired constituted existing obligations until the purpose of the loan transactions had been fully accomplished. We think the same situation exists here. There have been no refunding bonds issued or delivered to R. F. C. or to its trustee as is contemplated and agreed to upon the attainment of the objective of the scheme, and it is only when all of the nonconsenting bonds are brought into the bond debt composition so that they can be retired and cancelled that the new refunding 4 per cent. bonds of the District to the aggregate amount of the loan through R. F. C. can be issued and the bond debt of the District reduced accordingly. The fact that the lending agency of the United States receives interest at the rate of 4 per cent. upon the money advanced to the District until the objective of the rehabilitation project is attained is immaterial as far as the dissenting bondholders are concerned. If this arrangement is at all effectual to the objectors, it has proven beneficial to them because it is only fair that the lender should collect interest on the advancements, and the loan probably would not have been made without interest, in which event the objectors would be unable to get anything like what is now available to them for their bonds.

We have, in a memorandum filed this day In re Merced Irrigation District, D.C., 25 F.Supp. 981 in a similar proceeding under the same chapter of the Bankruptcy Act of 1938 by Merced Irrigation District, indicated our conception of the purpose of R. F. C. in assisting insolvent and financially weak taxing agencies of the state, such as irrigation and reclamation districts, in bond reduction and refunding activities, and except as to the mechanics employed to accomplish the purpose of the transactions, the mutual intent of the contracting parties in this proceeding and in that of Merced Irrigation District is identical.

We believe that the designation of a trustee for R. F. C. on one hand and an

agent of the District on the other in no manner affected the intent of the parties to the agreement or the status and obligations of the principals, or the right to have the bonds delivered by the agent, Hostetter, to the trustee, Burns, considered at full face value in ascertaining and determining the percentage of consenting creditors to the debt composition herein, under paragraph (d) of Section 83 of Chapter 9 of the Bankruptcy Act as amended in 1938, 11 U.S.C.A. § 403(d). The mere legal title to the deposited bonds escrowed under the refinancing project may have lodged in the trustee Burns, but his functions are purely formal, and the entire beneficial interest, as well as the absolute power of control over the bonds, vests, under the instruments in evidence, in R. F. C. It was clearly the intent of the makers of the conditional loan agreement that such should be the case. The dissenting bondholders are in no position to question the mechanics employed by the District and R. F. C. in the purely formal aspects of the transfer of the bonds to the trustee by the agent of the District. The plan, overwhelmingly approved by the bondholders of the District pursuant to applicable California law, and embodied in the petition now before this court, may be properly described as a cash offer of settlement for outstanding bonds, and in the absence of gross irregularity or illegal conduct, the mechanics employed by the District in procuring sufficient money to meet the cash payment requirements of the plan is a matter exclusively between the District and R. F. C. There is and could be no claim of fraud or unlawful discrimination by the nonconsenting group of bondholders. All bondholders, whether consenting to or opposing the plan of settlement, are dealt with on a parity, and although the loss which all the bondholders sustain by the debt composition project is serious and regrettable, nevertheless it is uniform and operates equally and without discrimination. This is all that the Bankruptcy Act requires, providing those owning two-thirds in value consent to the composition of the debt that is owing to them. The strongest evidence of the fairness and equity of the settlement is the indisputable fact that creditors representing more than 87 per cent. of the total amount of the outstanding indebtedness have voluntarily agreed to it and have sold and delivered their bonds for the price offered in the plan. The record shows that $1,256,000 of principal and all interest thereon has accepted the plan, leaving only $171,000 of bond principal with interest thereon in the hands of the nonconsenting bondholders. We think it would be unfair and preferential to permit less than 15 per cent. of the District's bondholders to enrich themselves by simply holding out to this late date. If there has been any improved financial condition in this District, such has been due, we think, principally to the conditional loan from R. F. C. and the coöperation of the assenting original bond owners. The attitude of the objectors has not been financially helpful in any way. The record before us shows that the bonds of the District had fallen in price since default in 1933 to a low of twenty-two cents on the dollar. They are now saleable, because of the plan under consideration, at a fraction under sixty cents on the dollar of principal face value.

The objecting bondholders interpose the defense of res judicata by reason of the institution and prosecution of a proceeding in this court in cause No. 4005, entitled "In the Matter of the Lindsay-Strathmore Irrigation District, an insolvent taxing agency." The decree entered therein was reversed in the Ninth Circuit Court of Appeals (Bekins v. Lindsay Strathmore Irr. Dist., 88 F.2d 1004) on motion of appellants dissenting bondholders, made solely upon the ground that the Congressional legislation which authorized the proceeding was utterly void as contravening the basic federal law. The former action was taken under Section 80 of the Bankruptcy Act of 1898 as added May 24, 1934, 11 U.S.C.A. § 303. This part of the Bankruptcy Act was declared unconstitutional and void by the United States Supreme Court in Ashton v. Cameron County Water Improvement District, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309, and therefore all of the action taken in the former case was fruitless and ineffective for any purpose. The whole field of debt readjustment by irrigation and reclamation districts in the state was thereby left open, and Congress by validly enacting Chapter 9 of the Bankruptcy Act as amended in 1938 has provided for the first time the only effective method that can be employed in such matters.

We have, in Re Merced Irrigation District, D.C., 25 F.Supp. 981 decided this day, considered the identical issue as to the effect of the former proceeding. What we said there, and the authorities which were cited, are equally applicable here. We find no merit in the plea of res judicata.

The same is true as to the effect of actions and special proceedings of a civil nature commenced, pending and undetermined in the Superior Court of the State of California in and for the County of Tulare, by certain of the objecting bondholders. These causes are all superseded by this bankruptcy proceeding.

The whole purpose of Congress in enacting the debt composition legislation under Article 1, Section 8, Clause 4 of the Constitution, U.S.C.A., would be nullified and rendered impotent and ineffectual if by actions such as those shown by the record creditors could forestall bankruptcy proceedings.

We think it so clearly established that within the domain of bankruptcies national power is supreme that citation of authorities to that effect is supererogation. The subject matter of this proceeding has been specifically held to be within constitutional bounds. Lindsay-Strathmore Irrigation District v. Bekins, supra.

The final issue that we consider necessary to mention in this memorandum is the contention that the plan of bond debt composition should be declared unfair and illegally discriminatory because it does not include a readjustment of bonds issued by other political and taxing agencies operating within the District, and also of liens of mortgages and trust deeds upon lands within the District. We think that it is not necessary under paragraph (d) of Section 83 of the Bankruptcy Act to include any of such obligations in this debt composition proceeding. Moreover, the lien rights and claims of certain of the creditors holding such obligations under applicable laws of the State of California are dissimilar to the obligations of the bonds of the District which are involved in this matter.

There is also a practical phase of the issue that should be considered, and that is the time and expense required to attempt any adjustment of such other obligations. Even if it were possible to bring about a satisfactory settlement with these multifarious entities, the delay that would be attendant would seriously and perhaps entirely impede any satisfactory refinancing scheme by the District.

In conclusion, after deliberate consideration of the entire record in this proceeding, we find that the plan of Lindsay-Strathmore Irrigation District for the composition of its debts under Chapter 9 of the Bankruptcy Act, 52 Stat. 939, as alleged in the petition filed September 21, 1937, and as disclosed at the hearings in this court, is lawful in every respect, fair, equitable, and for the best interest of all creditors, and does not discriminate unfairly in favor of any creditor or class of creditors. The plan is accordingly confirmed.

Attorneys for the petitioner will prepare and present appropriate Findings of Fact, Conclusions of Law, and Interlocutory Decree confirmatory of the plan embodied in the petition.