**HONOLULU RAPID TRANSIT COMPA-NY, Limited, et al., Plaintiffs-Appellants,**

v.

**Lorrin M. DOLIM et al., Defendants-Appellees.**

**No. 71-1216.**

United States Court of Appeals, Ninth Circuit.

April 11, 1972.

Francis N. Marshall (argued), Walter R. Allen, James B. Atkin, of Pillsbury, Madison & Sutro, San Francisco, Cal., Howard K. Hoddick, Peter G. Wheelon, of Anthony, Waddoups, Hoddick & Brown, Honolulu, Hawaii, for plaintiffs-appellants.

Harry S. Y. Kim, Deputy Atty. Gen. (argued), Bertram T. Kanbara, Atty. Gen., Honolulu, Hawaii, Paul Devens (argued), Honolulu, Hawaii, Robert M. Ehrhorn, Jr. (argued), David Y. Mar, Honolulu, Hawaii, for defendants-appellees.

---

Before MERRILL and DUNIWAY, Circuit Judges, and BELLONI, District Judge.*

MERRILL, Circuit Judge:

Honolulu Rapid Transit (HRT) is a Hawaii corporation that provides public transportation services in the City of Honolulu. It was formed in 1898, when it received its first franchise from the Territory of Hawaii to operate a public street railway. With expiration of the franchise due within a few years the Legislature of Hawaii in 1921 enacted a new franchise, Act 186 Session Laws of Hawaii, 1921, which was duly approved by the Congress [1] and submitted to HRT for its acceptance. On recommendation of the board of directors, the shareholders voted to accept the franchise and HRT has since operated under it.

The franchise, by § 20, permits the City of Honolulu to purchase HRT's property. Respecting the purchase price, it provides:

"The amount to be paid to the company for such purchase shall be determined by the public utilities commission; but such amount shall in no case exceed the actual cost of the physical property thereof, or the actual value of the tangible property so purchased; in both cases, less its bonded and all other debts and liabilities. The value of the franchise or good will or any other intangible element shall not be considered in determining the amount to be paid."

In 1970 the City resolved to purchase HRT's property and applied to the Hawaii Public Utilities Commission for valuation pursuant to the franchise terms.

HRT then brought this suit seeking (1) a declaration that § 20 is unconstitutional since it provides for the taking of HRT's property for public use without payment of just compensation, and (2) an injunction against further proceedings before the Public Utilities Commission. The suit was dismissed by the District Court for failure to state a claim. We affirm.

HRT's position is that even though the Government has an absolute power to grant or withhold a privilege such as the statutory franchise here in question, it cannot exact a waiver of constitutional rights as the price of the grant.[2] HRT construes the purchase and price provisions of the franchise as such an exaction: a waiver of HRT's rights to receive just compensation should its property be taken by the City for public use.

HRT relies upon Frost & Frost Trucking Co. v. Railroad Comm. (1926), 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101. There the Court struck down state action conditioning use of its highways by a private trucker upon the trucker's assumption of the status and burdens of a common carrier. The Court stated:

"It would be a palpable incongruity to strike down an act of state legislation which, by words of express divestment, seeks to strip the citizen of rights guaranteed by the federal Constitution, but to uphold an act by which the same result is accomplished

---

*Honorable Robert C. Belloni, Chief United States District Judge for the District of Oregon, sitting by designation.

1. U.S. Public Law No. 61 (1921), 42 U.S.Stat. 185.

2. It is well settled that the state may not condition the grant of a benefit upon the surrender of *religious freedom* (Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963)), *freedom of speech* (Lamont v. Postmaster, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965)), *freedom from self-incrimination* (Garrity v. N. J., 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967)), *freedom to use the federal courts* (Terral v. Burke Construction Co., 257 U.S. 529, 42 S.Ct. 188, 66 L.Ed. 352 (1922), *freedom from unconstitutional tax assessments* (Hanover Fire Ins. Co. v. Harding, 272 U.S. 494, 47 S.Ct. 179, 71 L.Ed. 372 (1926)), *and the freedom to operate one's business as a private rather than public instrumentality* (Frost & Frost Trucking Co. v. Railroad Comm., 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101 (1926)).

under the guise of a surrender of a right in exchange for a valuable privilege which the state threatens otherwise to withhold. It is not necessary to challenge the proposition that, as a general rule, the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited; and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence." (271 U.S. 593–594, 46 S.Ct. 607).

But HRT disregards the fact that there was here no "taking" by the City. This was not a unilateral exercise by the City of its power of eminent domain. The right of the City to acquire HRT's property at a certain price was not based upon its power to take, but upon agreement between the parties. Thus there was no event to which HRT's asserted constitutional rights attached. The transaction had "passed out of the range of the Fifth Amendment" and was a situation where "Parties, supposedly with due regard to their own interests, bargain between themselves as to compensation." Albrecht v. United States, 329 U.S. 599, 603–604, 67 S.Ct. 606, 609, 91 L.Ed. 532 (1947). To the same effect, United States v. Appalachian Elec. Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940); Fox River Paper Co. v. R. R. Comm., 274 U.S. 651, 47 S. Ct. 669, 71 L.Ed. 1279 (1927); Portland General Electric Co. v. Fed. Power Comm., 328 F.2d 165 (9th Cir. 1964). And see Oppenheim, Unconstitutional Conditions and State Powers, 26 Mich. L.R. 186, 189 (1941).

HRT's contentions, if valid, would gravely prejudice if not destroy the power of government to utilize options to acquire property, through making it impossible for the seller to commit himself to a sale price. Hindsight would always be available to compel price adjustments on the theory that the price no longer constituted just compensation.

■ An exchange of economic benefits such as this franchise represents underlies every commercial contract and the Supreme Court has left no doubt that the Federal Government enjoys power to conclude commercial bargains. Further, it may employ the remedies available to private citizens in enforcing a contract. Rex Trailer Co., v. United States, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956); Perkins v. Lukens Steel Co., 310 U.S. 133, 60 S.Ct. 869, 84 L.Ed. 1108 (1940). The states enjoy a parallel power. United States v. Bekins, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137 (1938). The doctrine of unconstitutional conditions does not strip state and federal governments of this indispensible and long acknowledged power.

■ Nor does the fact that the alternatives to the franchise available to HRT in 1921 were unattractive render the agreement a coerced one. The acceptance of HRT was an act of free choice.[3]

Judgment affirmed.

3. The parties do not dispute that, in 1921, HRT had the following option: The company could continue to operate under the original franchise at a profit until 1929, as it had since 1898. And, at the end of this period, it could sell its assets at fair market value to any willing buyer. Instead, however, HRT chose to conclude a second franchise agreement with the state. This resulted in fifty years additional operation as a state created monopoly in the street railway business. The *quid pro* quo, of course, was the transfer of company equipment to the state upon termination of franchise at a predetermined price. The choice confronting HRT was not a Hobson's choice. The Government merely demanded some recompense, in the public interest, for the continuation of exclusive franchise rights and the economic benefit conferred thereby. This entails no coercion. *See* I Restatement of the Law of Contracts, §§ 490–99.