**In re CITY OF STOCKTON, CALIFORNIA, Debtor.**

**Bankruptcy No. 12–32118–C–9.**
**DC No. OHS–5.**

United States Bankruptcy Court,
E.D. California.

Feb. 5, 2013.

Marc A. Levinson (argued), Patrick Bocash, John W. Killeen, Orrick, Herrington & Sutcliffe LLP, Sacramento, CA, for Debtor.

William W. Kannel (argued), Mintz Levin Cohn Ferris Glovsky and Popeo P.C.,

Boston, MA, for Wells Fargo Bank National Association, as Indenture Trustee.

Matthew M. Walsh (argued), Winston & Strawn LLP, Los Angeles, CA, for National Public Finance Guarantee Corporation.

Jeffrey Bjork (argued), Sidley Austin LLP, Los Angeles, CA, for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.

James O. Johnston (argued), Jones Day, Los Angeles, CA, for Franklin High Yield Tax Free Income Fund and Franklin California High Yield Municipal Fund.

Michael J. Gearin (argued), K & L Gates LLP, Los Angeles, CA, for California Public Employees' Retirement System.

## OPINION REGARDING APPLICABILITY OF FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

CHRISTOPHER M. KLEIN,
Bankruptcy Judge.

The question is whether a chapter 9 municipal debtor *must* obtain court approval under Federal Rule of Bankruptcy Procedure 9019 of any compromise or settlement it makes during the course of the chapter 9 case. The City of Stockton says "no." Its Capital market creditors say "yes." The answer is: 11 U.S.C. § 904 gives a chapter 9 debtor freedom to decide whether to ignore or to follow the Rule 9019 compromise-approval procedure, but the debtor may need to account for prior compromises during plan confirmation proceedings.

### Procedural History

The City of Stockton has agreed to settle a pending damages lawsuit for $55,000.

The capital market creditors, conceding that the settlement is unlikely to flunk Rule 9019 judicial scrutiny under the usual "fair and equitable" standard, contend that the City nevertheless must make a motion under Rule 9019 seeking court approval.

The City's motion seeks a ruling that Rule 9019 does not apply in chapter 9 cases unless the City elects to consent to judicial scrutiny and, only if Rule 9019 mandatorily applies in chapter 9, to obtain approval of the subject compromise. As Rule 9019 compliance is here determined to be optional, the court will not now review the compromise, even though the capital market creditors concede that the settlement is unexceptionable.

### Discussion

#### I

The answer to the question whether a chapter 9 debtor must obtain court approval of compromises is shrouded in mists of time.

#### A

The bone of contention is Federal Rule of Bankruptcy Procedure 9019:

(a) *Compromise.* On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

(b) *Authority to Compromise or Settle Controversies within Classes.* After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice.

Fed. R. Bankr.P. 9019(a)–(b).

It is this motion procedure that the capital market creditors insist must now be followed by the City.

## B

This dispute likely would not have arisen before the 1978 Bankruptcy Code displaced the Bankruptcy Act of 1898. An explicit statutory provision governed settlements, with a rule of procedure clarifying that it did not apply to chapter IX cases.

### 1

The Bankruptcy Act of 1898 provided that the trustee, with approval of the court, could compromise any controversy in the best interests of the estate.[1] And, until supplanted when Bankruptcy Rules issued pursuant to 28 U.S.C. § 2075 first took effect in 1974, the statute also designated the notice required for such a motion.[2]

After 1974, Bankruptcy Rule 919, on which the current Rule 9019 was modeled, provided for a noticed application seeking approval of a compromise or settlement.[3]

### 2

But Bankruptcy Act § 27 and § 58 did not apply in chapter IX municipal debt adjustment cases. There was no estate, nor a trustee, nor a receiver. The court was barred from interfering with property or revenues of the municipality. And from the time chapter IX was made permanent in 1946 until 1976, only securities debts could be modified in a chapter IX plan.[4]

And the Bankruptcy Rules issued in 1974 (replacing the former General Orders in Bankruptcy issued by the Supreme Court) included special chapter IX rules that made clear that Rule 919 regarding settlements did not apply. The chapter IX rules were explicit about which of the general Bankruptcy Rules applied and omitted Rule 919 from the list of incorporated rules.[5]

In short, the argument that a municipality must obtain court approval of settlements would have seemed dubious in 1978.

## C

The 1978 Bankruptcy Code reinvigorated in modern code form a statute that had become unsteady in its old age.

---

1. The former Bankruptcy Act provided:

   Sec. 27. The receiver or trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interests of the estate.

   Bankruptcy Act of 1898, § 27, Act of July 1, 1988, 30 Stat. 553–54, *as amended,* Chandler Act, § 27, Act of June 22, 1938, 52 Stat. 855, *repealed* 1979.

2. The required notice was:

   Sec. 58. (a) Creditors shall have at least 10 days' notice by mail, to their respective addresses as they appear in the list of creditors of the bankrupt or as afterward filed with the papers in the case by the creditors, of ... (6) the proposed compromise of any controversy in which the amount claimed by any party in money or value exceeds $1000,

   Bankruptcy Act of 1898, § 58(a)(6), Act of July 1, 1988, 30 Stat. 553–54, *as amended,* Chandler Act, § 58, Act of June 22, 1938, 52 Stat. 855, *repealed* 1979.

3. Rule 919 provided, in relevant part:

   (a) *Compromise.* On application by the trustee or receiver and after hearing on notice to the creditors as provided in Rule 203(a) and to such other persons as the court may designate, the court may approve a compromise or settlement.

   Bankruptcy Rule 919(a).

4. This was accomplished through the definition of creditor: "The term 'creditor' means the holder of a security or securities." § 82, Act of July 1, 1946, 60 Stat. 409.

5. The pertinent rule was Rule 9–40 ("Applicability of Federal Rules of Civil Procedure and Bankruptcy Rules"):

   (b) *Bankruptcy Rules.* Bankruptcy Rules 508, 903, 904, 906(e), 907–909, 911, 912, 915, 918, 927, and 928 apply in chapter IX cases, except that the reference in Rule 915 to Rule 112 shall be read as a reference to Rule 9–10.

   Bankruptcy Rule 9–40(b).

1

The Bankruptcy Code omitted former Bankruptcy Act provisions deemed more procedural than substantive or too well-established as doctrines to warrant repetition, not because the procedures or doctrines would no longer apply, but because rules of procedure or settled nonstatutory or interpretive doctrines were adequate to the task.

For that reason, the Supreme Court adopted a rule of construction for the Bankruptcy Code that doctrines established under the former Bankruptcy Act are presumed to have been carried forward except to the extent Congress indicated a contrary intent. *E.g., Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Prot.*, 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986); *Kelly v. Robinson*, 479 U.S. 36, 47, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

Basic bankruptcy settlement doctrine was carried forward into the Bankruptcy Code even though the express statutory command was deleted from statute. Over time, bankruptcy settlement doctrine had matured through Supreme Court decisions beyond the confines of the 1898 narrow "best interest" statute into a broader "fair and equitable" doctrine that, for example, in reorganization contexts overlapped plan confirmation issues. *E.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–41, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968) (*"TMT Trailer Ferry"*).

Although Congress may have elected to sidestep a complicated drafting problem because of the maturity of Supreme Court doctrine, coupled with the practicality that bankruptcy trustees saddled with fiduciary obligations naturally gravitate to the safety of a court order whenever a debatable settlement is at hand, it is beyond cavil that Congress did not indicate a contrary intent regarding settlements.

■■■ Hence, Congress left settlement procedure to a combination of procedural rule and nonstatutory judicial doctrine. Rule 9019, modeled on former Rule 919, regarding compromise or settlement, was adopted to prescribe a procedure. Fed. R. Bankr.P. 9019. As to substantive standards, courts have consistently followed the settlement precedents established under the Bankruptcy Act decisions requiring that settlements be "fair and equitable." *E.g., Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380–81 (9th Cir. 1986), *following TMT Trailer Ferry*, 390 U.S. at 424–41, 88 S.Ct. 1157.

■■■ It follows, then, that if judicial scrutiny of compromises was not required in chapter IX cases, then none is required in chapter 9 cases under the Bankruptcy Code.

The fact that the rules issued under the 1978 Bankruptcy Code abandoned the prior format of separate rules for separate chapters does not constitute a change in substantive law. *See* Preface to Comments of the Advisory Committee on Bankruptcy Rules Accompanying August 9, 1982, Transmittal of Preliminary Draft of Federal Rules of Bankruptcy Procedure. Nor, as a matter of law, could Rule 9019 trump § '904. Hence, Rule 9019 applies in chapter 9 cases only if the debtor elects to "consent" per § 904 to have the court consider approval of a compromise.

2

The conclusion that Rule 9019 review of compromises or settlements in chapter 9 cases is not mandatory also is to be inferred from the structure and terms of the Bankruptcy Code.

a

■■■ The extent to which bankruptcy settlement doctrine applies in the chapter

9 context is a puzzle because much of the Bankruptcy Code does not apply. Only chapters 1 and 9, together with the select provisions from chapters 3, 5, and 11 designated in § 901, apply in a chapter 9 case. 11 U.S.C. §§ 103(f) & 901.

The patchwork chapter 9 incorporation of only portions of otherwise generally applicable provisions of the Bankruptcy Code necessitates caution whenever thinking about bankruptcy concepts that are virtually axiomatic in cases under other chapters. Context necessarily shifts once one steps into the chapter 9 arena, and context can be crucial in municipal debt adjustment cases. So it is with compromises.

b

One dramatic difference of chapter 9 from other bankruptcy cases is that § 904 limits the jurisdiction and powers of the court over the municipal debtor:

> Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—
>
> (1) any of the political or governmental powers of the debtor;
>
> (2) any of the property or revenues of the debtor; or
>
> (3) the debtor's use or enjoyment of any income-producing property.

11 U.S.C. § 904.

As explained previously in this case, § 904 is a keystone in the constitutional arch between federal bankruptcy power and state sovereignty. *Ass'n of Retired Employees of the City of Stockton v. City of Stockton, Ca. (In re City of Stockton, Ca.)*, 478 B.R. 8, 16–20 (Bankr.E.D.Cal. 2012) (*Stockton II* ).

Indeed, the first federal municipal debt adjustment statute was held to be unconstitutional in part because the precursor of § 904 qualified the prohibition on federal judicial interference with municipal property or revenues to revenues "necessary *in the opinion of the judge* for essential governmental purposes." [6] *Ashton v. Cameron Cnty. Water Improvement Dist. No. 1*, 298 U.S. 513, 532, 56 S.Ct. 892, 80 L.Ed. 1309 (1936) (emphasis supplied).

Congress reacted to *Ashton* by enacting a slightly revised statute that deleted the phrase "in the opinion of the judge" from the limitation on judicial authority. The Supreme Court ruled it was constitutional. *United States v. Bekins*, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137 (1938).

In 1976, Congress deleted the phrase "necessary for essential governmental services" from the prohibition of judicial interference with the municipality's property or revenues. Act of April 8, 1978, Pub.L. 94–260, 90 Stat. 315.

■■■ The historical facts of the relationship of *Ashton* and *Bekins*, and of the 1976 revision of chapter IX to the deletion of the qualification "necessary in the opinion of the judge for essential governmental purposes" from what is now § 904, compel the conclusion that the bankruptcy court cannot prevent a chapter 9 debtor from spending its money for any reason, even foolishly or in a manner that disadvantages other creditors, unless the municipality consents to such judicial oversight. *Stock-*

---

**6.** The statute provided:

> The judge ... (11) shall not, by any order or decree, in the proceeding or otherwise, interfere with (a) any of the political or governmental powers of the taxing district, or (b) any of the property or revenues of the taxing district *necessary in the opinion of the judge for essential governmental purposes*, or (c) any income-producing property, unless the plan of readjustment so provides.

Bankruptcy Act § 80(c)(11), Act of May 24, 1934, 48 Stat. 801 (emphasis supplied).

*ton II*, 478 B.R. at 20. The power to approve a compromise implies the power to disapprove a compromise. And the power to disapprove is the power to interfere. And the power to interfere without consent with property or revenues is precisely what Congress has withheld in chapter 9 cases. 11 U.S.C. § 904.

Hence, § 904 means that the City can expend its property and revenues during the chapter 9 case as it wishes. It can pay any debt in full without permission from this court. If it wishes to spend $55,000 settling a lawsuit, it is entitled to do so without needing a permission from this court; such permission would imply a power to disapprove and thereby to interfere with the City's property or revenues that would offend § 904.

### 3

What then of actual examples from other chapter 9 cases of Rule 9019 motions seeking court approval of settlements? The answer lies in "consent" and does not undermine the conclusion that judicial approval is not mandatory.

The language of § 904 provides that the debtor may consent to judicial interference: "unless the debtor consents or the plan so provides, the court may not, ..., interfere with—... (2) any of the property or revenues of the debtor." 11 U.S.C. § 904.

When a chapter 9 debtor files a Rule 9019 motion to have the court approve a compromise or settlement, the municipality "consents" for purposes of § 904 to judicial interference with the property or revenues of the debtor needed to accomplish the proposed transaction. 11 U.S.C. § 904.

There are a number of plausible reasons why a municipality may choose to consent to judicial approval. A counterparty may insist on Rule 9019 judicial approval as a condition precedent to the settlement. The municipality may wish to obtain judicial approval as part of a strategy of transparency designed to forestall later challenges to plan confirmation. The fact of judicial approval may satisfy some requirement of a nonbankruptcy law with which the municipality also must comply.

If, for any reason, a chapter 9 debtor decides that its interests would be served by consenting to submit to a judicial approval under bankruptcy settlement-review standards, it is free to make that § 904 consent in the form of filing a Rule 9019 motion or by including such a review as a plan provision. 11 U.S.C. § 904.

### II

If the court cannot prevent or disapprove a settlement or compromise, what are the limiting principles? The answer lies in an appreciation of the plan confirmation process and a recognition that overreaching may make it difficult to confirm a plan.

If and when an order for relief is entered, the next task in a chapter 9 case is the filing and confirmation of a plan of adjustment. Since a chapter 9 debtor has the exclusive right to propose a plan, it follows that the burden of proving the essential elements for confirmation is on the debtor in its capacity as plan proponent.

The capital market creditors argue that unconstrained settlements amount to a creeping plan of arrangement. Perhaps so. Perhaps such a creep is legitimate and sensible. Perhaps nefarious. But, in any event, the day of reckoning comes at the plan confirmation hearing.

If any impaired class of claims does not accept the plan, then confirmation will require a so-called cramdown pursuant to § 1129(b)(1) in which the City must prove

that the plan "does not discriminate unfairly," and is "fair and equitable" with respect to that non-accepting, impaired class. 11 U.S.C. § 1129(b)(1), *incorporated by* 11 U.S.C. § 901(a). It is not difficult to imagine arguments that evidence of untoward settlements could be probative of § 1129(b)(1) issues.

Similarly, the plan must have "been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(2), *incorporated by* 11 U.S.C. § 901(a). If an objection to confirmation of a chapter 9 plan is filed, evidence must be presented on the § 1129(a)(2) issues. Fed. R. Bankr.P. 3020(b)(2). It is not difficult to imagine arguments that evidence of untoward settlements could be probative of § 1129(a)(2) issues.

Although the parties have debated in their briefs whether various other plan confirmation elements might be affected by evidence of the history and terms of prior settlements, further speculation is not necessary.

In short, the capital market creditors have, in effect, given notice that they reserve the right to litigate the debtor's conduct and management and spending choices during the case at the time of plan confirmation. That is the limiting principle and the protection to which they are entitled.

\*       \*       \*

For the foregoing reasons, the City's motion will be granted to the extent that it seeks a ruling that it is not required to seek approval of compromises pursuant to Rule 9019. Any such motion that it does make will be deemed to constitute "consent" for purposes of § 904 that would permit the court to assess whether the proposed compromise is "fair and equitable" under bankruptcy settlement standards. This ruling renders moot the remainder of the motion—seeking approval

of the $55,000 compromise only if the court rules that such approval is mandatory—which shall be dismissed.