(Slip Opinion)     OCTOBER TERM, 2015     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## COMMONWEALTH OF PUERTO RICO ET AL. *v.* FRANKLIN CALIFORNIA TAX-FREE TRUST ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 15–233.   Argued March 22, 2016—Decided June 13, 2016*

In response to an ongoing fiscal crisis, petitioner Puerto Rico enacted the Puerto Rico Public Corporation Debt Enforcement and Recovery Act. Portions of the Recovery Act mirror Chapters 9 and 11 of the Federal Bankruptcy Code and enable Puerto Rico's public utility corporations to restructure their climbing debt. Respondents, a group of investment funds and utility bondholders, sought to enjoin the Act. They contended, among other things, that a Bankruptcy Code provision explicitly pre-empts the Recovery Act, see 11 U. S. C. §903(1). The District Court enjoined the Act's enforcement, and the First Circuit affirmed, concluding that the Bankruptcy Code's definition of "State" to include Puerto Rico, except for purposes of defining who may be a debtor under Chapter 9, §101(52), did not remove Puerto Rico from the scope of the pre-emption provision.

*Held*: Section 903(1) of the Bankruptcy Code pre-empts Puerto Rico's Recovery Act. Pp. 5–15.

(a) Three federal municipal bankruptcy provisions are relevant here. First, the "gateway" provision, §109(c), requires a Chapter 9 debtor to be an insolvent municipality that is "specifically authorized" by a State "to be a debtor." Second, the pre-emption provision, §903(1), expressly bars States from enacting municipal bankruptcy laws. Third, the definition of "State," §101(52), as amended in 1984, "includes . . . Puerto Rico, except for the purpose of defining who may be a debtor under chapter 9." Pp. 5–8.

———————

*Together with No. 15–255, *Acosta-Febo et al.* v. *Franklin California Tax-Free Trust et al.*, also on certiorari to the same court.

(b) If petitioners are correct that the amended definition of "State" excludes Puerto Rico altogether from Chapter 9, then the pre-emption provision does not apply. But if respondents' narrower reading is correct and the definition only precludes Puerto Rico from authorizing its municipalities to seek Chapter 9 relief, then Puerto Rico is barred from implementing its Recovery Act. Pp. 8–14.

(1) The Bankruptcy Code's plain text supports respondents' reading. The unambiguous language of the pre-emption provision "contains an express pre-emption clause," the plain wording of which "necessarily contains the best evidence of Congress' pre-emptive intent." *Chamber of Commerce of United States of America* v. *Whiting*, 563 U. S. 582, 594. The definition provision excludes Puerto Rico for the single purpose of defining who may be a Chapter 9 debtor, an unmistakable reference to the §109 gateway provision. This conclusion is reinforced by the definition's use of the phrase "defining who may be a debtor under chapter 9," §101(52), which is tantamount to barring Puerto Rico from "specifically authorizing" which municipalities may file Chapter 9 petitions under the gateway provision, §903(1). The text of the exclusion thus extends no further. Had Congress intended to exclude Puerto Rico from Chapter 9 altogether, including Chapter 9's pre-emption provision, Congress would have said so. Pp. 9–11.

(2) The amended definition of "State" does not exclude Puerto Rico from all of Chapter 9's provisions. First, Puerto Rico's exclusion as a "State" for purposes of the gateway provision does not also remove Puerto Rico from Chapter 9's separate pre-emption provision. A State that chooses under the gateway provision not to authorize a municipality to file is still bound by the pre-emption provision. Likewise, Puerto Rico is bound by the pre-emption provision, even though Congress has removed its authority under the gateway provision to authorize its municipalities to seek Chapter 9 relief. Second, because Puerto Rico was not "by definition" excluded from Chapter 9, both §903's introductory clause and its proviso, the pre-emption provision, continue to apply in Puerto Rico. Finally, the argument that the Recovery Act is not a "State law" that can be pre-empted is based on technical amendments to the terms "creditor" and "debtor" that are too "subtle" to support such a "[f]undamental chang[e] in the scope" of Chapter 9's pre-emption provision. *Kellogg Brown & Root Services, Inc.* v. *United States ex rel. Carter*, 575 U. S. ___, ___. Pp. 11–14.

805 F. 3d 322, affirmed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, BREYER, and KAGAN, JJ., joined. SOTOMAYOR, J.,

Syllabus

filed a dissenting opinion, in which GINSBURG, J., joined.  ALITO, J., took no part in the consideration or decision of these cases.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

————

Nos. 15–233 and 15–255

————

## COMMONWEALTH OF PUERTO RICO, ET AL., PETITIONERS

15–233          *v.*
### FRANKLIN CALIFORNIA TAX-FREE TRUST, ET AL.


## MELBA ACOSTA-FEBO, ET AL., PETITIONERS
15–255          *v.*
### FRANKLIN CALIFORNIA TAX-FREE TRUST, ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[June 13, 2016]

JUSTICE THOMAS delivered the opinion of the Court.

The Federal Bankruptcy Code pre-empts state bankruptcy laws that enable insolvent municipalities to restructure their debts over the objections of creditors and instead requires municipalities to restructure such debts under Chapter 9 of the Code. 11 U. S. C. §903(1). We must decide whether Puerto Rico is a "State" for purposes of this pre-emption provision. We hold that it is.

The Bankruptcy Code has long included Puerto Rico as a "State," but in 1984 Congress amended the definition of "State" to exclude Puerto Rico "for the purpose of defining who may be a debtor under chapter 9." Bankruptcy Amendments and Federal Judgeship Act, §421(j)(6), 98 Stat. 368, now codified at 11 U. S. C. §101(52). Puerto Rico interprets this amended definition to mean that

Chapter 9 no longer applies to it, so it is no longer a "State" for purposes of Chapter 9's pre-emption provision. We hold that Congress' exclusion of Puerto Rico from the definition of a "State" in the amended definition does not sweep so broadly. By excluding Puerto Rico "for the purpose of *defining who may be a debtor under chapter 9*," §101(52) (emphasis added), the Code prevents Puerto Rico from authorizing its municipalities to seek Chapter 9 relief. Without that authorization, Puerto Rico's municipalities cannot qualify as Chapter 9 debtors. §109(c)(2). But Puerto Rico remains a "State" for other purposes related to Chapter 9, including that chapter's pre-emption provision. That provision bars Puerto Rico from enacting its own municipal bankruptcy scheme to restructure the debt of its insolvent public utilities companies.

## I
### A

Puerto Rico and its instrumentalities are in the midst of a fiscal crisis. More than $20 billion of Puerto Rico's climbing debt is shared by three government-owned public utilities companies: the Puerto Rico Electric Power Authority, the Puerto Rico Aqueduct and Sewer Authority, and the Puerto Rico Highways and Transportation Authority. For the fiscal year ending in 2013, the three public utilities operated with a combined deficit of $800 million. The Government Development Bank for Puerto Rico (Bank)—the Commonwealth's government-owned bank and fiscal agent—has previously provided financing to enable the utilities to continue operating without defaulting on their debt obligations. But the Bank now faces a fiscal crisis of its own. As of fiscal year 2013, it had loaned nearly half of its assets to Puerto Rico and its public utilities. Puerto Rico's access to capital markets has also been severely compromised since ratings agencies downgraded Puerto Rican bonds, including the utilities', to

noninvestment grade in 2014.

Puerto Rico responded to the fiscal crisis by enacting the Puerto Rico Corporation Debt Enforcement and Recovery Act (Recovery Act) in 2014, which enables the Commonwealth's public utilities to implement a recovery or restructuring plan for their debt. 2014 Laws P. R. p. 371. See generally McGowen, Puerto Rico Adopts A Debt Recovery Act For Its Public Corporations, 10 Pratt's J. Bkrtcy. Law 453 (2014). Chapter 2 of the Recovery Act creates a "consensual" debt modification procedure that permits the public utilities to propose changes to the terms of the outstanding debt instruments, for example, changing the interest rate or the maturity date of the debt. 2014 Laws P. R., at 428–429. In conjunction with the debt modification, the public utility must also propose a Bank-approved recovery plan to bring it back to financial self-sufficiency. *Ibid.* The debt modification binds all creditors so long as those holding at least 50% of affected debt participate in (or consent to) a vote regarding the modifications, and the participating creditors holding at least 75% of affected debt approve the modifications. *Id.,* at 430. Chapter 3 of the Recovery Act, on the other hand, mirrors Chapters 9 and 11 of the Federal Bankruptcy Code by creating a court-supervised restructuring process intended to offer the best solution for the broadest group of creditors. See *id.,* at 448–449. Creditors holding two-thirds of an affected class of debt must participate in the vote to approve the restructuring plan, and half of those participants must agree to the plan. *Id.,* at 449.

B

A group of investment funds, including the Franklin California Tax-Free Trust, and BlueMountain Capital Management, LLC, brought separate suits against Puerto Rico and various government officials, including agents of the Bank, to enjoin the enforcement of the Recovery Act.

Collectively, the plaintiffs hold nearly $2 billion in bonds issued by the Electric Power Authority, one of the distressed utilities. The complaints alleged, among other claims, that the Federal Bankruptcy Code prohibited Puerto Rico from implementing its own municipal bankruptcy scheme.

The District Court consolidated the suits and ruled in the plaintiffs' favor on their pre-emption claim. 85 F. Supp. 3d 577 (PR 2015). The court concluded that the pre-emption provision in Chapter 9 of the Federal Bankruptcy Code, 11 U. S. C. §903(1), precluded Puerto Rico from implementing the Recovery Act and enjoined its enforcement. 85 F. Supp. 3d, at 601, 614.

The First Circuit affirmed. 805 F. 3d 322 (2015). The court examined the 1984 amendment to the definition of "State" in the Federal Bankruptcy Code, which includes Puerto Rico as a "State" for purposes of the Code "'*except* for the purpose of defining who may be a debtor under chapter 9.'" *Id.,* at 330–331 (quoting §101(52); emphasis added). The court concluded that the amendment did not remove Puerto Rico from the scope of the pre-emption provision and held that the pre-emption provision barred the Recovery Act. *Id.,* at 336–337. The court opined that it was up to Congress, not Puerto Rico, to decide when the government-owned companies could seek bankruptcy relief. *Id.,* at 345.

We granted the Commonwealth's petitions for writs of certiorari. 577 U. S. ___ (2015).*

---

　*After the parties briefed and argued these cases, Members of Congress introduced a bill in the House of Representatives to establish an oversight board to assist Puerto Rico and its instrumentalities. See H. 5278, 114th Cong., 2d Sess. (2016). The bill does not amend the Federal Bankruptcy Code; it instead proposes adding a chapter to Title 48, governing the Territories. *Id.,* §6.

## II

These cases require us to parse three provisions of the Bankruptcy Code: the "who may be a debtor" provision requiring States to authorize municipalities to seek Chapter 9 relief, §109(c), the pre-emption provision barring States from enacting their own municipal bankruptcy schemes, §903(1), and the definition of "State," §101(52). We first explain the text and history of these provisions. We then conclude that Puerto Rico is still a "State" for purposes of the pre-emption provision and hold that this provision pre-empts the Recovery Act.

### A

The Constitution empowers Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States." Art. I, §8, cl. 4. Congress first exercised that power by enacting a series of temporary bankruptcy Acts beginning in 1800, which gave way to a permanent federal bankruptcy scheme in 1898. See An Act To Establish a Uniform System of Bankruptcy Throughout the United States, 30 Stat. 544; *Hanover Nat. Bank* v. *Moyses*, 186 U. S. 181, 184 (1902). But Congress did not enter the field of municipal bankruptcy until 1933 when it enacted the precursor to Chapter 9, a chapter of the Code enabling an insolvent "municipality," meaning a "political subdivision or public agency or instrumentality of a State," 11 U. S. C. §101(40), to restructure municipal debts. See McConnell & Picker, When Cities Go Broke: A Conceptual Introduction to Municipal Bankruptcy, 60 U. Chi. L. Rev. 425, 427, 450–451 (1993).

Congress has tailored the federal municipal bankruptcy laws to preserve the States' reserved powers over their municipalities. This Court struck down Congress' first attempt to enable the States' political subdivisions to file for federal bankruptcy relief after concluding that it infringed the States' powers "to manage their own affairs."

*Ashton* v. *Cameron County Water Improvement Dist. No. One*, 298 U. S. 513, 531 (1936). Congress tried anew in 1937, and the Court upheld the amended statute as an appropriate balance of federal and state power. See *United States* v. *Bekins*, 304 U. S. 27, 49–53 (1938). Critical to the Court's constitutional analysis was that the State had first authorized its instrumentality to seek relief under the federal bankruptcy laws. See *id.,* at 47–49, 53–54.

Still today, the provision of the Bankruptcy Code defining who may be a debtor under Chapter 9, which we refer to here as the "gateway" provision, requires the States to authorize their municipalities to seek relief under Chapter 9 before the municipalities may file a Chapter 9 petition:

"§109. Who may be a debtor

.       .       .       .       .

"(c) An entity may be a debtor under chapter 9 of this title if and only if such entity —

"(1) is a municipality;

"(2) is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter . . . ."

The States' powers are not unlimited, however. The federal bankruptcy laws changed again in 1946 to bar the States from enacting their own municipal bankruptcy schemes. The amendment overturned this Court's holding in *Faitoute Iron & Steel Co.* v. *Asbury Park*, 316 U. S. 502, 507–509 (1942) (rejecting contention that Congress occupied the field of municipal bankruptcy law). In *Faitoute*, the Court held that federal bankruptcy laws did not preempt New Jersey's municipal bankruptcy scheme, which required municipalities to seek relief under state law before resorting to the federal municipal bankruptcy scheme. *Ibid.* To override *Faitoute*, Congress enacted a

provision expressly pre-empting state municipal bankruptcy laws. Act of July 1, 1946, 60 Stat. 415.

The express pre-emption provision, central to these cases, is now codified with some stylistic changes in §903(1):

> "§903.    Reservation of State power to control municipalities
>
> "This chapter does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise, but—
>
> "(1) a State law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition; and
>
> "(2) a judgment entered under such a law may not bind a creditor that does not consent to such composition."

The third provision of the Bankruptcy Code at issue is the definition of "State," which has included Puerto Rico since it became a Territory of the United States in 1898. The first Federal Bankruptcy Act, also enacted in 1898, defined "States" to include "the Territories, the Indian Territory, Alaska, and the District of Columbia." 30 Stat. 545. When Congress recodified the bankruptcy laws to form the Federal Bankruptcy Code in 1978, the definition of "State" dropped out of the definitional section. See generally Bankruptcy Reform Act, 92 Stat. 2549–2554. Congress then amended the Code to reincorporate the definition of "State" in 1984. §421, 98 Stat. 368–369, now codified at §101(52). The amended definition includes Puerto Rico as a State for purposes of the Code with one exception:

> "§101. Definitions

.　　　　.　　　　.　　　　.　　　　.

"(52) The term 'State' includes the District of Columbia and Puerto Rico, except for the purpose of defining who may be a debtor under chapter 9 of this title."

B

It is our task to determine the effect of the amended definition of "State" on the Code's other provisions governing Chapter 9 proceedings.  We must decide whether, in light of the amended definition, Puerto Rico is no longer a "State" only for purposes of the gateway provision, which requires States to authorize their municipalities to seek Chapter 9 relief, or whether Puerto Rico is also no longer a "State" for purposes of the pre-emption provision.

The parties do not dispute that, before 1984, Puerto Rico was a "State" for purposes of Chapter 9's pre-emption provision.  Accordingly, before 1984, federal law would have pre-empted the Recovery Act because it is a "State law prescribing a method of composition of indebtedness" for Puerto Rico's instrumentalities that would bind non-consenting creditors, §903(1).

The parties part ways, however, in deciphering how the 1984 amendment to the definition of "State" affected the pre-emption provision.  Petitioners interpret the amended definition of "State" to exclude Puerto Rico altogether from Chapter 9.  If petitioners are correct, then the pre-emption provision does not apply to them.  Puerto Rico, in other words, may enact its own municipal bankruptcy scheme without running afoul of the Code.  Respondents, on the other hand, read the amended definition narrowly.  They contend that the definition precludes Puerto Rico from "specifically authoriz[ing]" its municipalities to seek relief, as required by the gateway provision, §109(c)(2), but that Puerto Rico is no less a "State" for purposes of the pre-emption provision than the other "State[s]," as that term

is defined in the Code. If respondents are correct, then the pre-emption provision applies to Puerto Rico and bars it from enacting the Recovery Act.

Respondents have the better reading. We hold that Puerto Rico is still a "State" for purposes of the pre-emption provision. The 1984 amendment precludes Puerto Rico from authorizing its municipalities to seek relief under Chapter 9, but it does not remove Puerto Rico from the reach of Chapter 9's pre-emption provision.

1

The plain text of the Bankruptcy Code begins and ends our analysis. Resolving whether Puerto Rico is a "State" for purposes of the pre-emption provision begins "with the language of the statute itself," and that "is also where the inquiry should end," for "the statute's language is plain." *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 241 (1989). And because the statute "contains an express pre-emption clause," we do not invoke any presumption against pre-emption but instead "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Chamber of Commerce of United States of America* v. *Whiting*, 563 U. S. 582, 594 (2011) (internal quotation marks omitted); see also *Gobeille* v. *Liberty Mut. Ins. Co.*, 577 U. S. \_\_\_, \_\_\_ (2016) (slip op., at 12).

The amended definition of "State" excludes Puerto Rico for the single "purpose of defining *who may be a debtor* under chapter 9 of this title." §101(52) (emphasis added). That exception unmistakably refers to the gateway provision in §109, titled "who may be a debtor." Section 109(c) begins, "An entity may be a debtor under chapter 9 of this title if and only if . . . ." §109(c). We interpret Congress' use of the "who may be a debtor" language in the amended definition of "State" to mean that Congress intended to exclude Puerto Rico from this gateway provision delineat-

ing who may be a debtor under Chapter 9. See, *e.g., Sulli-van* v. *Stroop*, 496 U. S. 478, 484 (1990) (reading same term used in different parts of the same Act to have the same meaning); see also *Northcross* v. *Board of Ed. of Memphis City Schools*, 412 U. S. 427, 428 (1973) (*per curiam*) ("[S]imilarity of language . . . is . . . a strong indication that the two statutes should be interpreted *pari passu*"). Puerto Rico, therefore, is not a "State" for purposes of the gateway provision, so it cannot perform the single function of the "State[s]" under that provision: to "specifically authoriz[e]" municipalities to seek Chapter 9 relief. §109(c). As a result, Puerto Rico's municipalities cannot satisfy the requirements of Chapter 9's gateway provision until Congress intervenes.

The amended definition's use of the term "defining" also confirms our conclusion that the amended definition excludes Puerto Rico as a "State" for purposes of the gateway provision. The definition specifies that Puerto Rico is not a "'State . . . for the purpose of *defining* who may be a debtor under Chapter 9." §101(52) (emphasis added). To "define" is "to decide upon," 4 Oxford English Dictionary 383 (2d ed. 1989), or "to settle" or "to establish or prescribe authoritatively," Black's Law Dictionary 380 (5th ed. 1979). As discussed, a State's role under the gateway provision is to do just that: The State must define (or "decide upon") which entities may seek Chapter 9 relief. Barring Puerto Rico from "*defining* who may be a debtor under chapter 9" is tantamount to barring Puerto Rico from "specifically authorizing" which municipalities may file Chapter 9 petitions under the gateway provision. The amended definition of "State" unequivocally excludes Puerto Rico as a "State" for purposes of the gateway provision.

The text of the definition extends no further. The exception excludes Puerto Rico *only* for purposes of the gateway provision. Puerto Rico is no less a "State" for purposes of

the pre-emption provision than it was before Congress amended the definition. The Code's pre-emption provision has prohibited States and Territories defined as "States" from enacting their own municipal bankruptcy schemes for 70 years. See 60 Stat. 415 (overturning *Faitoute*, 316 U. S., at 507–509). Had Congress intended to "alter th[is] fundamental detai[l]" of municipal bankruptcy, we would expect the text of the amended definition to say so. *Whitman* v. *American Trucking Assns., Inc.*, 531 U. S. 457, 468 (2001). Congress "does not, one might say, hide elephants in mouseholes." *Ibid.*

2

The dissent, adopting many of petitioners' arguments, reads the amended definition to say what it does not—that "for the purpose of . . . chapter 9," Puerto Rico is not a State. The arguments in support of that capacious reading are unavailing.

First, the dissent agrees with petitioners' view that the exclusion of Puerto Rico as a "State" for purposes of the gateway provision effectively removed Puerto Rico from all of Chapter 9. See *post*, at 7–8 (opinion of SOTOMAYOR, J.). To be sure, §109(c) and the surrounding subsections serve an important gatekeeping role. Those provisions "specify who qualifies—and who does not qualify—as a debtor under the various chapters of the Code." *Toibb* v. *Radloff*, 501 U. S. 157, 161 (1991). For instance, a railroad must file under Chapter 11, not Chapter 7, §§109(b)(1), (d), whereas only "family farmer[s] or family fisherm[e]n" may file under Chapter 12. The provision delineating who may be a debtor under Chapter 9 is no exception. Only municipalities may file under Chapter 9, and only if the State has "specifically authorized" the municipality to do so. §§109(c)(1)–(2); see also McConnell & Picker, 60 Chi. L. Rev., at 455–461 (discussing the gatekeeping requirements for Chapter 9).

That Puerto Rico is not a "State" for purposes of the gateway provision, however, says nothing about whether Puerto Rico is a "State" for the other provisions of Chapter 9 involving the States. The States do not "pass through" the gateway provision. *Post,* at 8. The gateway provision is instead directed at the debtors themselves—the municipalities, in the case of Chapter 9 bankruptcy. A *municipality* that cannot secure state authorization to file a Chapter 9 petition is excluded from Chapter 9 entirely. But the same cannot be said about the *State* in which that municipality is located. A State's only role under the gateway provision is to provide that "authoriz[ation]" to file. §109(c)(2). The pre-emption provision then imposes an additional requirement: The States may not enact their own municipal bankruptcy schemes. A State that chooses not to authorize its municipalities to seek Chapter 9 relief under the gateway provision is no less bound by that pre-emption provision. Here too, Puerto Rico is no less bound by the pre-emption provision even though Congress has removed its authority to provide authorization for its municipalities to file Chapter 9 petitions. Again, if it were Congress' intent to also exclude Puerto Rico as a "State" for purposes of that pre-emption provision, it would have said so.

Second, both petitioners and the dissent place great weight on the introductory clause of §903. *Post,* at 6–7. The pre-emption provision cannot apply to Puerto Rico, so goes the argument, because it is a proviso to §903's introductory clause, which they posit is inapplicable to Puerto Rico. The introductory clause affirms that Chapter 9 "does not limit or impair the power of a State to control" its "municipalit[ies]." §903. The dissent surmises that this clause "is irrelevant" and "meaningless" in Puerto Rico. *Post,* at 7. Because Puerto Rico's municipalities are ineligible for Chapter 9 relief, Chapter 9 cannot "affec[t] Puerto Rico's control over its municipalities," according to

the dissent. *Ibid.* In other words, "there is no power" for the introductory clause to "reserve" for Puerto Rico's use. *Ibid.* Petitioners likewise contend that "it would be nonsensical for Congress to provide Puerto Rico with a shield against intrusion by a Chapter that, by definition, can have no effect on Puerto Rico." Brief for Petitioner Commonwealth of Puerto Rico et al. in No. 15–233, p. 25. So "it follows" that the pre-emption provision, the proviso to that clause, cannot apply either. *Ibid.*

This reading rests on the faulty assumption that Puerto Rico is, "by definition," excluded from Chapter 9. *Ibid.* For all of the reasons already explained, see Part II–B–1, *supra*, it is not. The amended definition of "State" precludes Puerto Rico from authorizing its municipalities to seek Chapter 9 relief. But Puerto Rico is no less a "State" for purposes of §903's introductory clause and its proviso. Both continue to apply in Puerto Rico. They are neither "irrelevant" nor "meaningless." *Post,* at 7. If, for example, Congress created a path for the Puerto Rican municipalities to restructure their debts under Chapter 9, then §903 would assure Puerto Rico, no less a "State" for purposes of this section, of its continued power to "control, by legislation or otherwise, [its] municipalit[ies] . . . in the exercise of the political or governmental powers of such municipalit[ies]."

Third, the Government Development Bank contends that the Recovery Act does not run afoul of the pre-emption provision because the Recovery Act does not bind nonconsenting "creditors," as the Bankruptcy Code now defines that term. In 1978, Congress redefined "creditor" to mean an "entity that has a claim against the *debtor* . . . ." 92 Stat. 2550, now codified at §101(10) (emphasis added). A "debtor," in turn, is a "person or municipality concerning which a case under this title has been *commenced.*" *Id.,* at 2551, now codified at §101(13) (emphasis added). In light of these definitions, the Bank contends

that the Puerto Rican municipalities are not "debtor[s]" as the Code defines the term because they cannot "commenc[e]" an action under Chapter 9 without authorization from Puerto Rico. Brief for Petitioner Acosta-Febo et al. 31–33. And because respondents cannot be "creditors" of a nonexistent "debtor," the Recovery Act is not a "State law" that binds "any creditor." §903(1). *Id.,* at 31–33.

Tellingly, the dissent does not adopt this reading. The Bank's interpretation would nullify the pre-emption provision. Applying the Bank's logic, a municipality that fails to meet any one of the requirements of Chapter 9's gate-keeping provision is not a "debtor" and would have no "creditors." So a State could refuse to "specifically author-iz[e]" its municipalities to seek relief under Chapter 9, §109(c)(2), required to commence a case under that chapter. That State would be free to enact its own municipal bankruptcy scheme because its municipalities would have no "creditors" under federal law. The technical amendments to the definitions of "creditor" and "debtor" are too "subtle a move" to support such a "[f]undamental chang[e] in the scope" of Chapter 9's pre-emption provision. *Kellogg Brown & Root Services, Inc.* v. *United States ex rel. Carter*, 575 U. S. ___, ___ (2015) (slip op., at 9).

\*      \*      \*

The dissent concludes that "the government and people of Puerto Rico should not have to wait for possible congressional action to avert the consequences" of the Commonwealth's fiscal crisis. *Post,* at 9. But our constitutional structure does not permit this Court to "rewrite the statute that Congress has enacted." *Dodd* v. *United States*, 545 U. S. 353, 359 (2005); see also *Electric Storage Battery Co.* v. *Shimadzu*, 307 U. S. 5, 14 (1939). That statute precludes Puerto Rico from authorizing its municipalities to seek relief under Chapter 9. But it does not remove Puerto Rico from the scope of Chapter 9's pre-

emption provision.  Federal law, therefore, pre-empts the Recovery Act.  The judgment of the Court of Appeals for the First Circuit is affirmed.

*It is so ordered.*

JUSTICE ALITO took no part in the consideration or decision of these cases.

# SUPREME COURT OF THE UNITED STATES

---

Nos. 15–233 and 15–255

---

COMMONWEALTH OF PUERTO RICO, ET AL.,
PETITIONERS
15–233                    *v.*
FRANKLIN CALIFORNIA TAX-FREE TRUST, ET AL.

MELBA ACOSTA-FEBO, ET AL., PETITIONERS
15–255                    *v.*
FRANKLIN CALIFORNIA TAX-FREE TRUST, ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIRST CIRCUIT

[June 13, 2016]

JUSTICE SOTOMAYOR, with whom JUSTICE GINSBURG joins, dissenting.

Chapter 9 of the Federal Bankruptcy Code allows States' "municipalities"—cities, utilities, levee boards, and the like—to file for federal bankruptcy with their State's authorization. But the Code excludes Puerto Rican municipalities from accessing federal bankruptcy. 11 U. S. C. §§101(52), 109(c)(2). Because of this bar, Puerto Rico enacted its own law in 2014—the Recovery Act—to allow its utilities to restructure their significant debts outside the federal bankruptcy process.

The Court today holds that Puerto Rico's Recovery Act is barred by §903(1) of Chapter 9 of the Bankruptcy Code, which prohibits States from creating their own bankruptcy processes for their insolvent municipalities. §903(1). Because Puerto Rican municipalities cannot access Chapter 9's federal bankruptcy process, however, a nonfederal bankruptcy solution is not merely a parallel option; it is

the only existing legal option for Puerto Rico to restructure debts that could cripple its citizens. The structure of the Code and the language and purpose of §903 demonstrate that Puerto Rico's municipal debt restructuring law should not be read to be prohibited by Chapter 9.

I respectfully dissent.

I

The Commonwealth of Puerto Rico and its municipalities are in the middle of a fiscal crisis. *Ante,* at 2. The combined debt of Puerto Rico's three main public utilities exceeds $20 billion. These utilities provide power, water, sewer, and transportation to residents of the island. With rising interest rates and limited access to capital markets, their debts are proving unserviceable. Soon, Puerto Rico and the utilities contend, they will be unable to pay for things like fuel to generate electricity, which will lead to rolling blackouts. Other vital public services will be imperiled, including the utilities' ability to provide safe drinking water, maintain roads, and operate public transportation.

When debtors face untenable debt loads, bankruptcy is the primary tool the law uses to forge workable long-term solutions. By requiring a debtor and creditors to negotiate together and forcing both sides to make concessions within the limits set by law, bankruptcy gives the debtor a "fresh start," discourages creditors from racing each other to sue the debtor, prohibits a small number of holdout creditors from blocking a compromise, protects important creditor rights such as the prioritization of debts, and allows all parties to find equitable and efficient solutions to fiscal problems. See *Marrama* v. *Citizens Bank of Mass.*, 549 U. S. 365, 367 (2007); *Young* v. *Higbee Co.*, 324 U. S. 204, 210 (1945).

These concerns are starkly presented in the context of municipal entities like public utilities. While a business

corporation can use bankruptcy to reorganize, and, if that fails, fold up shop and liquidate all of its assets, governments cannot shut down power plants, water, hospitals, sewers, and trains and leave citizens to fend for themselves. A "fresh start" can help not only the unfortunate individual debtor but also—and perhaps especially—the unfortunate municipality and its people. See *United States* v. *Bekins*, 304 U. S. 27, 53–54 (1938).

Congress has excluded the municipalities of Puerto Rico and the District of Columbia from the federal municipal bankruptcy scheme in Chapter 9 of the Bankruptcy Code. See 11 U. S. C. §§101(52), 109(c). So, in 2014, the Puerto Rican Government enacted the Puerto Rico Public Corporation Debt Enforcement and Recovery Act (Recovery Act or Act). 2014 Laws P. R. p. 371. The Act authorizes Puerto Rico's public utilities to restructure their debts while continuing to provide essential public services like electricity and water. Portions of the Act mirror Chapter 9 of the Bankruptcy Code and allow Puerto Rico's utilities to renegotiate their debts with their creditors. See *ante,* at 3. Like a restructuring plan filed under Chapter 9, a restructuring plan under the Recovery Act that is approved by at least a majority of creditors and a court would be binding on all creditors, including objecting holdouts.

After the Recovery Act was signed into law, mutual funds and hedge funds holding bonds of the Puerto Rico Electric Power Authority filed two lawsuits seeking to enjoin Puerto Rico's enforcement of the Act. The District Court held that the Recovery Act could not be enforced because, *inter alia*, it was prohibited by §903(1) of the Bankruptcy Code. The First Circuit agreed that §903(1) pre-empted the Act, and did not address whether some provisions of the Act might be unlawful for other reasons. This Court now affirms.

## II

Bankruptcy is not a one-size-fits-all process. The Federal Bankruptcy Code sets out specific procedures and governing law for each type of entity that seeks bankruptcy protection. To see how this approach works, consider the structure of the Code in more depth.

Chapter 1 is the starting point. It sets out how to read the Code. See 11 U. S. C. §101 *et seq.* For example, §101 sets out general definitions, and §102 provides rules of construction. Now skip ahead to §109, titled, "Who may be a debtor." That section tells would-be debtors and the interested parties in their bankruptcy which specific bankruptcy laws apply to them. For example, §109 tells an ordinary person seeking to restructure her debts to do so using the rules outlined in Chapter 7, §109(b), or those enumerated in Chapter 13, §109(e). It tells a family farm or fisherman to use the rules outlined in Chapter 12. §109(f). Certain corporations can use Chapter 7, §109(b), or Chapter 11, §109(d). And a municipality's bankruptcy is governed by the rules in Chapter 9. §109(c)(1).

Because §109 tells different kinds of debtors which bodies of bankruptcy law apply to them, the Court has described that section as a "'gateway'" provision. *Ante,* at 6. Once an entity meets the eligibility requirements for a specific "gateway" set out in §109 and elects to pass through that gateway, it becomes subject to the relevant chapter of the Code—7, 9, 11, 12, or 13. The debtor, its creditors, and any other interested parties are governed only by that chapter and the chapters of the Bankruptcy Code—like Chapter 1—that apply to all cases. See §103; 1 Collier Pamphlet Edition, Bankruptcy Code 2015, p. 59 ("[A]s a general rule, the provisions of the particular chapter apply only in that chapter").

Interpreting statutory provisions in the context of the operative chapters in the Bankruptcy Code in which they appear is not unusual—it is how the Code is designed to

work. For example, both Chapter 9 and Chapter 13 re-
quire the debtor to "file a plan" proposing how the court
should reorganize its debts. Compare §§941–946 ("The
Plan" under Chapter 9) with §§1321–1330 ("The Plan"
under Chapter 13). But no bankruptcy court or practi-
tioner would suggest that a Chapter 9 "plan" also has to
satisfy the requirements of Chapter 13. The Code is read
in context.

These cases concern §109's "gateway" for municipali-
ties. That provision says that a municipality may file for
bankruptcy under Chapter 9 if and only if it meets five
eligibility criteria. The debtor must (1) be "a municipal-
ity," §109(c)(1); (2) be "specifically authorized . . . by State
law" to seek bankruptcy restructuring, §109(c)(2); (3) be
"insolvent," §109(c)(3); (4) have a "desir[e] to effect a plan
to adjust" its debts, §109(c)(4); and (5) have attempted to
negotiate with its creditors, with some exceptions,
§109(c)(5).

The second eligibility requirement is relevant here.
Only a municipality "authorized . . . by *State* law" may
pass through the "gateway" and file for bankruptcy under
Chapter 9's provisions. But Chapter 1's definitional provi-
sion, which applies throughout the Code, provides that the
"term 'State' includes the District of Columbia and Puerto
Rico, except for the purpose of defining who may be a
debtor under chapter 9 of this title." §101(52). It is un-
disputed that the "except for the purpose of defining who
may be a debtor under chapter 9" clause is referring to the
second eligibility prerequisite in §109's gateway provision.
*Ante,* at 8. So, in short, Puerto Rico cannot "specifically
authoriz[e]" any of its municipalities to apply for Chapter
9 bankruptcy. No Puerto Rican municipality will thus
satisfy the state authorization requirement of §109's
gateway for municipalities, and so no Puerto Rican munic-

ipality can access Chapter 9.[1]

The question in these cases is whether §903(1), a pre-emption provision in Chapter 9, still applies to Puerto Rico even though its municipalities are not eligible to pass through the "gateway" into Chapter 9. It should not. Section 903 by its terms presupposes that Chapter 9 applies only to States who have the power to authorize their municipalities to invoke its protection.

Section 903 delineates the balance of power between the States that can authorize their municipalities to access Chapter 9 protection and the bankruptcy court that would preside over any municipal bankruptcy commenced under Chapter 9. To understand that interplay, and why §903(1) does not pre-empt the Recovery Act, it is important to consider that statutory provision in context.

Section 903, titled "Reservation of State power to control municipalities," reads in full:

"This chapter [Chapter 9] does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise, but—

"(1) a State law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition; and

"(2) a judgment entered under such a law may not bind a creditor that does not consent to such composition."

_____

[1] Puerto Rico was initially included in the scope of Chapter 9. §1(29), 52 Stat. 842. But in 1984, Congress amended the Bankruptcy Code, without comment, to bar Puerto Rico and the District of Columbia from authorizing their municipalities to access Chapter 9. §421(j)(6), 98 Stat. 368, codified at 11 U. S. C. §101(52).

This "reservation" of power to the States was added to the Code in response to this Court's earlier recognition that States possess plenary control over their municipalities, particularly in fiscal matters. *Faitoute Iron & Steel Co.* v. *Asbury Park*, 316 U. S. 502, 509 (1942), overruled in part by Act of July 1, 1946, 60 Stat. 415. Section 903 says that States continue to possess those powers not implicated by the bankruptcy itself by noting that "[t]his chapter," *i.e.,* Chapter 9, "does not limit or impair the power of a State to control" its municipalities. §903. For example, even if a municipality is in Chapter 9 bankruptcy, a State could still revoke its charter.

Section 903, however, also subjects that broad reservation to an exception articulated in the pre-emption provision that the Court now says bars Puerto Rico's Recovery Act. States may control their municipalities, but they may not "prescrib[e] a method of composition of indebtedness of [a] municipality" that "bind[s] any creditor that does not consent to such composition." §903(1).

But this distribution of power between the State and the bankruptcy court is irrelevant to Puerto Rico. Because Puerto Rico's municipalities cannot pass through the §109(c) gateway to Chapter 9, nothing in the operation of a Chapter 9 case affects Puerto Rico's control over its municipalities. The "reservation" preamble is therefore meaningless to Puerto Rico—there is no power to reserve from Chapter 9's operation. And if this preamble does not and cannot apply to Puerto Rico, it follows that §903(1)'s proviso qualifying that reservation of power to the States does not apply to Puerto Rico either. See, *e.g., United States* v. *Morrow*, 266 U. S. 531, 534–535 (1925).

This understanding of §903 is fundamentally confirmed by the careful gateway structure the Code sets out for understanding how its chapters work together. See *Utility Air Regulatory Group* v. *EPA*, 573 U. S. \_\_\_, \_\_\_ (2014) (slip op., at 15) ("'"[W]ords of a statute must be read in

their context and with a view to their place in the overall statutory scheme"'" (quoting *FDA* v. *Brown & Williamson Tobacco Corp.*, 529 U. S. 120, 133 (2000))). Chapter 1's definitions section prevents Puerto Rico from defining "who may be a debtor under chapter 9" under §109(c)'s gateway. Because of the structure of the Code, that change to Chapter 1's definition has ripple effects. By amending the definition of State to exclude Puerto Rico, the District of Columbia, and their municipalities from §109(c)'s gateway, Congress excluded Puerto Rico from Chapter 9 for all purposes—it shut the gate and barred it tight. And because Chapter 9's process and rules by their terms can only affect municipalities and States eligible to pass through the gateway in §109(c), that must mean that none of Chapter 9's provisions—including §903's pre-emption provision—apply to Puerto Rico and its municipalities.

## III

The Court rejects contextual analysis in favor of a syllogism. According to the Court, §903(1) pre-empts all "State" composition laws like Puerto Rico's that bind nonconsenting municipal creditors. "State" includes Puerto Rico, "except for the purpose of defining who may be a debtor under chapter 9 of this title," §101(52), which is a reference to §109(c). Thus, according to the Court, while the definition of "State" prevents Puerto Rico from authorizing its municipalities to seek Chapter 9 protection under §109(c), it has no effect on the pre-emption clause in §903(1).

The majority's plain meaning syllogism is not without force. But it ignores this Court's repeated exhortations to read statutes in context of the overall statutory scheme. *Utility Air*, 573 U. S., at ___ (slip op., at 15). In context, for the reasons discussed, §903 is directed to States that can approve their municipalities for Chapter 9 bankruptcy.

Moreover, in an attempt to buttress its syllogism, the majority's analysis makes an additional critical misstep.

The majority argues that, in light of the longstanding nature of the §903(1)'s pre-emption provision to preclude state municipal bankruptcy laws, "[h]ad Congress intended to 'alter this fundamental detail' of municipal bankruptcy" to not apply to Puerto Rico, "we would expect the text of the amended definition to say so. Congress 'does not, one might say, hide elephants in mouseholes.'" *Ante,* at 10–11 (quoting *Whitman* v. *American Trucking Assns., Inc.,* 531 U. S. 457, 468 (2001); citation and brackets omitted). But the Court ignores that Congress already altered the fundamental details of municipal bankruptcy when it amended the definition of "State" to exclude Puerto Rico from authorizing its municipalities to take advantage of Chapter 9. Nobody has presented a compelling reason for why Congress would have done so, and the legislative history of the amendment is unhelpful.[2] Under either interpretation the scheme has been fundamentally altered by Congress. And, in context, the proper understanding of that alteration is that Puerto Rico and its municipalities have been removed entirely from Chapter 9—both from the benefits it provides and from the burden of the pre-emption clause in §903(1).

Pre-emption cases may seem like abstract discussions of the appropriate balance between state and federal power. But they have real-world consequences. Finding pre-emption here means that a government is left powerless and with no legal process to help its 3.5 million citizens.

_____

[2] The only comment on excluding Puerto Rico from Chapter 9 came from Professor Frank Kennedy, former Executive Director of the Commission on Bankruptcy Laws, who said: "I do not understand why the municipal corporations of Puerto Rico are denied by the proposed definition of 'State' of the right to seek relief under Chapter 9." Bankruptcy Improvements Act, Hearing on S. 333 et al. before the Senate Committee on the Judiciary, 98th Cong., 1st Sess., 326 (1983).

Congress could step in to resolve Puerto Rico's crisis. But, in the interim, the government and people of Puerto Rico should not have to wait for possible congressional action to avert the consequences of unreliable electricity, transportation, and safe water—consequences that members of the Executive and Legislature have described as a looming "humanitarian crisis." The White House, Addressing Puerto Rico's Economic and Fiscal Crisis and Creating a Path to Recovery, p. 1 (Oct. 26, 2015) (italics deleted); Letter from Sen. Richard Blumenthal et al. to Charles Grassley, Chair, Senate Committee on the Judiciary (Sept. 30, 2015). Statutes should not easily be read as removing the power of a government to protect its citizens.

\*    \*    \*

For the foregoing reasons, I would hold that §903(1) of the Bankruptcy Code does not pre-empt Puerto Rico's Recovery Act. I respectfully dissent.